LE BLANC, Justice.
In this suit the petitioners pray that a sale of real estate between Albert M. My-rick, deceased, and his brother, L. L. My-rick, defendant, be declared null and void due to simulation.
Plaintiffs are the former wife, Irene C. Myrick, and the ten children of the deceased, Albert Myrick. Mrs. Myrick, besides appearing in her own right, appears in her capacity as tutrix of five of the children who are minors. The marriage of Irene and Albert Myrick was dissolved by judicial decree on April 29, 1949. At the time, Albert Myrick was ordered to pay his former wife and minor children alimony. On the same date, the deceased sold certain property in Bienville Parish to his brother, L. L. Myrick for $4,000. The real estate was apparently his own separate property.
Albert Myrick died in November. 19S0, and an attempt was then made to locate his assets. It was found that he left no property except his personal belongings and a note owed him by his mother for. $1,200. Plaintiffs claim, however, that the real estate which the deceased sold to his brother was in fact a fraudulent conveyance and should be included in the succession as part of his estate. Defendant’s contention is that the deed to the contested property was made in good faith and for valuable consideration. The case was tried and judgment was' rendered in favor of defendant; dismissing plaintiffs’ suit.. Plaintiffs now appeal.from that judgment........„
*735 Petitioners readily admit that their claim is predicated merely on suspicious circumstances. They allege in their petition that at the time of the judicial separation, the deceased refused to pay alimony to his former wife and children; that in order to prevent such payment he attempted to dissolve his assets and as a part of this scheme, arranged the fraudulent conveyance of the property in dispute to his brother. They further set out that after the judgment of separation they continued to live on the property (the deceased returned to his mother’s house to reside) and on several occasions the deceased sold some of the livestock and crops in his own name. In addition, they averred that the deceased continued to refer to the property as his own and at no time before the death of Albert Myrick did the defendant ever disclose the fact that he was the true owner.
Defendant answered these allegations by producing the deed transferring the property and a check for $4,000 which he gave to the deceased as consideration for the sale. Both documents are in proper form and good order. Notwithstanding this, plaintiffs urge, that the money which the check represented was never removed from the bank on which the check was drawn, or if it was, it was returned shortly after the sale. The check, was endorsed by the deceased and is marked “Paid” by the bank.[1] It is true that the $4,000 was never located by plaintiffs but that merely substantiates the allegations to the effect that the deceased refused to pay the alimony owed them. The deceased and plaintiffs were not on the best of terms. It was only natural, since the deceased was attempting to elude plaintiffs, as far as alimony was concerned, that he would refrain from producing a sum of money from which they could demand the alimony due them.
The most damaging evidence that plaintiffs were able to produce arose out of the fact that at no time after the sale did L. L„ Myrick ever pay taxes on the land even though the property was on two occasions put up for tax sale, and that eventually the taxes were paid by Irene Myrick, former wife of the deceased, in order to retain possession of the land.
The law imposes no duty on the taxpayer to pay the taxes due on his property at any given time. The only penalty incurred by a delay in payment is the interest that is asked. But he may wait to pay even until the day that the property is advertised for sale. The defendant in this, case admits that he delayed payment and that when he finally sent the money to the-tax collector it was returned to him as the taxes had already been paid by Mrs. My-rick. Certainly circumstances such as. these do not justify setting aside an otherwise valid sale of real estate on. the ground of fraud and simulation.
*737 Plaintiffs further argue that from the fact that the deceased, rather than defendant, sold the livestock on the land, it can be inferred that the conveyance of the land was simulated. But we think the inference is refuted by Mrs. M-yrick’s own testimony. Referring to the relations that existed between the defendant and his deceased brother, she stated that they never could agree and that the deceased never would have trusted his brother by putting property in his hands and letting him hold it for him. One of her sons also testified very much in the same manner. On the other hand the defendant’s explanation of this circumstance is that his brother acted as his agent in selling some of the livestock and crops at the time when he lived in Orange, Texas and was not able to attend to these matters personally.
Plaintiffs rely also on Article 2444 of the LSA-Civil Code as a basis for attacking the sale. That Article provides:
“The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale.”
Aside from the fact that the article only applies to disguised donations by parents to their children, whereas the sale in question is one between siblings, the plaintiffs have completely failed to prove that “no price has been paid”. They have merely attempted to show that it was not in his nature nor was it the disposition of the deceased to sell real estate to his brother. On the one hand they try to show that the brothers did not trust each other enough to act as reciprocal agents, and on the other they attempt to show that the two had so much faith in each other that they acted in collusion in order to defraud the family of the deceased.
It is true, according to Article 2480’ of the LSA-Civil Code, that in cases where a seller remains in possession of the thing sold, the sale is presumed to be simulated and in the absence of proof to the contrary will be held to be simulated. However, defendant has succeeded in proving that the documents relating to the sale, i. e., the deed and the check representing the price paid, were genuine, and having overcome the presumption the burden rested on the plaintiffs to prove the contrary and that the sale was simulated.
It is a fact that in cases of this sort, resort must be had to circumstances surrounding the sale which may appear suspicious, in the effort made to set it aside as being simulated. We are of the opinion, however, that it requires circumstances of a more suspicious nature than those presented in this case, and also much stronger proof than we have here, to declare null and void a sale on the ground that it was a simulated transaction entered into with the fraudulent intention of defeating the *739 rights of a former wife and minor children to their claims for alimony.
There appears no manifest error in the finding of fact of the trial judge and we are constrained to affirm the judgment appealed from.
Judgment affirmed.

. Some of the plaintiffs’ witnesses testified that the endorsement was not genuine, but the proof fell far short of showing that the signature was forged.