MOISE, Justice.
The district court rendered a judgment which held that the sale of June 6, 1950, made by Ella and Ray Hidalgo to Jacqueline and James Rosenblath (daughter and son-in-law of the vendors), was a simulation. The judgment directed that the property be surrendered to W. E. Harper, Trustee in Bankruptcy for the Hidalgos. From this judgment, Ray J. and Ella Hidalgo and Mr. and Mrs. Rosenblath appeal.
The property involved bears Municipal No. 289 Arthur Drive, Shreveport, Louisiana.
Mrs. Hidalgo purchased the property on September 2, 1949 for a cash consideration of $1,250 and the assumption of the balance due on two mortgages in favor of the Standard Mortgage Corporation for the respective amounts of $9,646.88 and $2,-343.88.
Mr. and Mrs. Hidalgo were operating a restaurant on Line Avenue in Shreveport, Louisiana. In May, 1950, foreclosure proceedings were instituted against them and they were also sued for rent.
On June 6, 1950, Mrs. Hidalgo, joined by her husband, Ray J. Hidalgo, sold the property 289 Arthur Drive to her daughter and son-in-law, Jacqueline and James Rosenblath, for a consideration of $1,000J cash and assumption of the mortgages.
On June 1, 1951, bankruptcy proceedings were invoked by the Hidalgos.
In February 1952, Mrs. Hidalgo closed out her bank account and opened a joint checking account with her daughter, Mrs. James Rosenblath. She declared that this was done to prevent her husband, Mr. Hidalgo, from drawing checks on her funds. Mrs. Hidalgo was gainfully employed.
In August, 1952, Mrs. Hidalgo filed a suit for separation from bed and board' against her husband. After this suit was filed, Mrs. Hidalgo, her two minor children, and her daughter and son-in-law (the Rosenblaths) continued living in the premises, 289 Arthur Drive. Mrs. Hidalgo paid the monthly installments on the house, and she testified that these payments on the mortgage were her contribution to the expenses of the household. Her daughter and son-in-law paid all other expenses which necessitated running the household,, which included food, clothing and utilities. However, the evidence discloses that the *512 Rosenblaths were living in the house with Mr. and Mrs. Hidalgo and ran the household prior to and after the alleged simulated sale. Mr. and Mrs. Hidalgo became reconciled, and, thereupon, the Rosenblaths obtained other living quarters, because it is said that the father and son-in-law did not get along.
The Trustee in Bankruptcy argues that these circumstances are a strong corroboration of his contention that the purported sale was a simulation; that the Hidalgos never at any time ■ actually relinquished possession of the premises; that taking together all of the facts and circumstances of the case, that the sale undoubtedly was made for the purpose of defeating their creditors. Such was the conclusion of the learned trial judge, who saw and heard the witnesses.
No one was in a better position to know of the insolvency- of the vendors than the vendees who lived in the home and who were the daughter and son-in-law of the vendors. In fact their financial troubles became a public record because of the filing of the above recited two suits against them.
Article 1984 of the LSA-Civil Code provides :
“Obligee with knowledge of debtor’s insolvency — Fraud presumed.”
That article reads:
“Every contract shall be deemed to have been made in fraud of creditors, when the obligee knew that the obligor was in insolvent circumstances, * *
The Trustee in Bankruptcy is the plaintiff in this action and is concerned with the interest of all parties, especially those who are the creditors of Mr. and Mrs. Hidalgo. He, therefore, had an interest to pursue, and we feel that the trial judge was correct in overruling the exceptions of no right or cause of action filed in the trial court by the defendants. Article 1969 of the LSA-Civil Code states:
“From the principle established by the last preceding article, it results that every act done by a debtor with the intent of depriving his creditor of the eventual right he has upon the property of such debtor, is illegal, and ought, as respects such creditor, to be avoided. * * * ”
In this Court the defendants urge that the judgment of the trial court was incorrect and should be reversed because the authentic act of purchase by the Rosenblaths is full proof of itself and controls the allegations of the petition, but plaintiff-trustee alleges that the act of sale is a simulation and was executed for the purpose of defeating the creditors. Under such circumstances, Article 2236 of the LSA-Civil Code, which holds that the authentic act is full proof of itself, yields to allegations of fraud. McKenzie v. Bacon, *514 40 La.Ann. 157, 4 So. 65; Locascio v. First State Bank & Trust Co. of Hammond, 168 La. 723, 123 So. 304.
Defendants also urge that under Article 2278 of the LSA-Civil Code, parole evidence is not admissible to prove any promise to pay the debt of a third party. We also direct attention that parole evidence was admissible to prove simulation in this suit. See Lyons v. Lawrence, 118 La. 461, 43 So. 51; Reeves v. Felder, La. App., 6 So.2d 688.
The act of sale of June 6, 1950 states that there is an assumption of the mortgages on the property, but Mr. and Mrs. Rosenblath were never legally declared mortgagors. Because of lack of notification, the mortgage corporation did not change its interest. An official of the mortgage company testified that his company had never been informed of the transfer of the property to the Rosenblaths and that all payments were made as if no sale had been made. The insurance policies protecting the property from fire, in the name of Mrs. Hidalgo, had never been changed. This official testified that the monthly payments were made by monthly checks drawn by Mrs. Rosenblath. The evidence discloses that only Mrs. Hidalgo deposited any funds in the joint account from which Mrs. Rosenblath drew some checks.
Plaintiff strenuously urges that there' i.s .a strong corroboration in law. by the fact that the Hidalgos continued to reside in the property. The law holds that such is good evidence of a simulation, but that this fact standing by itself is not conclusive. At the time of the act of sale to the Rosenblaths, not only were Mr. and Mrs. Hidalgo having financial troubles, but they were on the verge of a separation. Mrs. Hidalgo continued to live in the house, and when she and her husband became reconciled the Rosenblaths moved out of the premises. Would vendees surrender complete dominion and control of the property if they were the actual owners thereof? If there was a real sale, the Rosenblaths would not have left their property. This is a fact from the realm of common sense. Article 2480 of the LSA-Civil Code provides:
“In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith> and establish the reality of the sale."
We do not think that the evidence here shows that the parties acted in good faith, nor does their proof show the reality of the sale.
In the case of Stipe v. Simon, 223 La. 542, 66 So.2d 330, 331, the following pronouncement was made;
*516 “The reservation■ of the usufruct and . the retaining of possession of the property by a precarious title give reason to presume that the sale was a simulation. Therefore, the burden of proof was shifted to this defendant to establish the 'reality of the sale and to prove that she was acting in good faith. LSA-C.C. art. 2480, King v. Atkins, 33 La.Ann. 1057; Olivier’s Minor Children v. Olivier, 215 La. 412, 40 So.2d 803; Succession of Combre, 217 La. 955, 47 So.2d 734. See also, Succession of Dupre, 218 La. 907, 51 So.2d 317, and Peyton v. Roth, 149 La. 147, 88 So. 773.”
Defendants have not borne this burden of proof showing the reality of the sale and the payment of the price. Stipe v. Simon, supra; King v. Atkins, 33 La.Ann. 1057; Bates v. Blitz, 205 La. 536, 17 So.2d 816; and Succession of Yeates, 213 La. 541, 35 So.2d 210. The Rosenblaths’ savings account shows a deposit and a withdrawal — six months after the date of the purported sale — sufficient to cover the cash consideration of $1,000, and Mrs. Hidalgo testified that she was paid the $1,000 in cash. She further stated that she used a greater part of it to pay a bank note and a doctor’s bill, but she produced neither a cancelled note nor a doctor’s bill or receipt to corroborate her testimony.
Therefore, under the facts and circumstances, we feel as did the trial judge that the act of conveyance was unreal and a simulation.
For the reasons assigned, the judgment of the trial court is affirmed.