LOTTINGER, Judge.
This suit was brought by the appellant, Ethel Landers Beatty, against her former husband, George Roland Beatty, and his father, William Martin Beatty, seeking to have four sales of realty, executed by George Roland Beatty to his father, set aside and declared to be simulations and fraudulent, and therefore null, void and of no legal effect. The appellant and George Roland Beatty were married in 1955, established their matrimonial domicile in East Baton Rouge Parish, where it remained until 1962. The appellant alleges that during the year 1957, the defendant briefly had her committed to a hospital and that upon her release, he filed a suit for separation from bed and board, but that she and her husband were reconciled before a judgment was rendered, and continued to live together as man and wife until June of 1962. At that time the defendant filed a suit for separation from bed and board, in which suit he was granted a judgment in June of 1963. In June of 1964, the defendant filed suit for and was granted a final divorce.
In her petition, the plaintiff alleged that after the rendition of the decree of divorce between she and George Roland Beatty, that she discovered that her former husband had, during the year 1957, transferred all of his property to his father, William Martin Beatty, although George Roland Beatty continued living in one of the houses and managing the balance of the property. She alleged that all of the property transferred by her former husband to his father had formed a part of the community of acquets and gains which formerly existed between her and her husband, that the purported sales by her former husband were simulations designed to defraud her of her interest therein as a partner in community with him.
After a trial on the merits, the Trial Judge, giving oral reasons for judgment, which were transcribed, rendered judgment dismissing the plaintiff’s suit, from which judgment she has appealed to this Court.
The record shows that the appellant and George Roland Beatty were married in 1955, and that they lived together as man *857 and wife in East Baton Rouge Parish, until June of 1962. The defendant was granted a separation from bed and hoard by virtue of a judgment rendered in June of 1963. He thereafter obtained a final decree of divorce in June of 1964.
On December 20, 1957, George Roland Beatty sold to his father, real property in East Baton Rouge Parish on Hooper Road for a recited cash consideration of $5,150.00. On December 23, 1957, George Roland Beatty sold to his father another piece of real property on Belmont Avenue in the City of Baton Rouge for a recited consideration of $10,000.00, of which $2,890.14 was paid in cash, and the purchaser assumed the payment of two promissory notes which were identified with acts of mortgage which affected the property conveyed, one of which had an unpaid balance of $4,515.76, and the other of which had an unpaid balance of $2,594.10. On December 24, 1957, George Roland Beatty sold to his father real property on Jackson Avenue in Baton Rouge for a recited consideration of $6,-155.02, of which the sum of $1,150.00 was allegedly paid in cash, with the balance of the purchase price represented by the purchaser’s assumption of a promissory note identified with an act of mortgage which bore upon and affected the property conveyed. On August 27, 1958, George Roland Beatty conveyed to his father four lots of ground in Kline Subdivision in Livingston Parish, Louisiana, for a recited consideration of $5,600.00, of which $1,000.00 was purportedly paid in cash, and the balance of the purchase price represented by the assumption by the purchaser of a promissory note previously executed by the seller and identified with an act of special mortgage which bore upon and affected that property.
On February 8, 1958, William M. Beatty, by authentic act, executed a usufruct in favor of George Roland Beatty, wherein he gave his son the usufruct over the Belmont Avenue property for a period of five years, reciting as consideration the sum of $1.00 and other valuable considerations.
The first specification of error assigned by the appellant is that the Trial Court erred in holding that the documentary evidence supported the defendants’ contention that the property had actually been sold to William Martin Beatty, in view of the fact that George Roland Beatty continued in possession of the property subsequent to the sale and was still in possession of the property at the time of the trial. The second specification of error is that the Trial Court erred in holding that any consideration actually passed for this property in view of the testimony of both of the defendants that the sum of $10,190.14 was paid in cash, although there were no checks drawn and that neither of the defendants had used the bank for the transfer of the funds. The third specification of error is that the Trial Court erred in not holding that these deeds were simulations and frauds done with fraudulent intent to deprive the petitioner of her property. The fourth specification of error urged by appellant is that the Lower Court erred in holding that the burden of proof was on the plaintiff to make out a case by a preponderance of evidence where she did not know that the transfers were made until some five years later, and she was possessed of no other proof except circumstantial evidence.
Rather than go into the merits of each of these assignments of error individually, we should first like to generally review the record. In her testimony under direct examination, Mrs. Beatty indicated that she had knowledge of the fact that her husband had transferred the Belmont Street property to his father during the time when she and her husband were still living together. In this regard, she testified as follows:
“Q. Now, how long did you live or did you continue to live in this house you lived in on Belmont until you all got a separation from bed and board, until you separated?
A. We never moved, we lived there the entire time.
*858 Q. Did you know that your husband had passed a deed to his father during the period of this time?
A. Some one had mentioned — had asked me if I knew it, that he had sold the house and I said ‘No’ and I asked my husband about it and he said that he put it in his father’s name to — on account of the mortgage insurance, if his father should die the property would be paid for.
Q. But you all continued to live in there?
A. Certainly did.”
Mrs. Beatty testified that during the time of her marriage she had knowledge of the various properties which she and her husband owned, as she occasionally tended to the renting and grass cutting on the property. She also testified that at the time of their divorce her husband told her that they had no property, as he had sold it to his father.
Mr. George Roland Beatty on cross examination affirmed the fact that he had sold these various pieces of property to his father in 1957 and 1958, admitting that he received $2,890.14 from one purchase, $5,150.00 for another, and $1150.00 in cash for another. He likewise confirmed the fact that he had sold the lots in Denham Springs to his father and received $1,000.00 in cash as a result of that transaction. Mr. Beatty admitted that his father had paid him, within a short period of time, $10,190.-14 in cash. His testimony was that he did not deposit this money in a bank and that he had spent it. He said that when he received the money, he kept it in books in his book cabinet at his office. Immediately subsequent to his transfer of the Belmont Street property to his father, George Roland Beatty commenced paying his father the sum of $90.00 per month in rent for that property. These rental payments continued even after the execution by William M. Beatty of the usufruct in favor of his son in February of 1958. George Roland Beatty’s occupancy of the Belmont Street property had not ceased even at the time of the trial.
Mr. William M. Beatty, under cross examination, testified that he had bought the property in question on the recommendation of his son, and further that he had bought the property without ever having looked at it, and while residing in Ruston, Louisiana, where he still resided at the time of the trial. He testified that he obtained the money with which to pay his son for these various parcels of property from savings, from his salary, from war bonds, and some cash from his life insurance. Mr. Beatty testified that he had been regularly paying the installments on the notes which he assumed at the time that he purchased the various properties from his son, and he filed in the record, numerous cancelled checks evidencing periodic payment by him of these installments, as well as the evidence of payment by him of property taxes, maintenance expenses and insurance premiums on the various pieces of property. Mr. Beatty testified from his income tax return which evidenced the fact that he had apparently reported the rental income from the various pieces of property as his own income, that he had deducted therefrom the costs and expenses of maintaining the property, and that he had likewise taken the depreciation allowance allowed on the rental property.
We might mention here that at the time that these sales were executed William M. Beatty was approximately 70 years of age, and at the time of the trial, he was approximately 78 years of age. We believe that a portion of his inability to recall specific details surrounding these various transactions could properly be attributed to his advanced age, both at the time of the acquisition of these properties and at the time of the trial.
In his oral reasons for judgment dictated from the bench, the Trial Judge said:
“ * * * I am very frank to say that I have a very strong suspicion that both the defendants are not truthful with the *859 ‘Court. I am strongly of the opinion that •this property by right belongs to George Roland Beatty and the community between him and his former wife. I am very strongly of the opinion that the sales are an absolute nullity and were simulated and that Mr. William M. Beatty hasn’t put up a dime that he hasn’t gotten something back for the money he paid. That is my suspicion arrived at from the conflicting answers, the giving of the testimony and the interest involved by the parties.
If I had never heard this case and picked up the record like an appeal court would do there is proof of evidence in the record of the payment of the purchase price of these pieces of property. My suspicion cannot be substantiated sufficiently to ■offset that proof. It is very disheartening when a situation like this arises and the Court believes that the husband has acted to deprive and defraud the wife of her rights and property and I believe that’s what the husband has done in this case, but as I say my belief, my suspicion, is not sufficiently substantiated to offset the checks that are offered here * * *
It doesn’t sound reasonable that Mr. William M. Beatty, the father, would have ■such confidence in anybody, son or anybody else, to buy that much property and pieces of property at one and the same time or within a reasonable time of each other never having seen the property, knowing nothing whatever about it, particularly in view of the fact that he had a limited income, he had some savings, but he can’t tell us what he had to sell to get that cash money.
The fact that George Roland Beatty kept $10,000.00 or thereabouts, a little more or a little less, out of the bank and referred to bills he paid here two or three years later as being part of the disposition of that money just leaves a terrible cloud on the credibility of his evidence. To say that a man keeps $10,000.00 or $1,-000.00 or $100.00 in books in his office is peurile, it is ridiculous and I don’t believe a word of it, but I must come right back to the record and view it as the evidence will be reviewed by a higher court and say frankly that while my suspicions are strong I am not convinced by any preponderance of evidence that what I say is the absolute manner in which this thing was handled * * *
Another reason why judgment cannot be rendered in favor of plaintiff is that there is no actual proof on behalf of plaintiff that no money was paid for these properties. The burden of proof is on the pláintiff to make out a case by preponderance of evidence and there is not any evidence produced by the plaintiff that these sales were without consideration * * * ”
Based upon these considerations, the Trial Judge dismissed the plaintiff’s suit.
We disagree with the Trial Judge’s conclusion that the plaintiff has not borne the burden of proof with reference to establishing that the recited consideration in these various conveyances was not actually paid. Certainly, it can be said that Mr. William M. Beatty performed many of the functions which could reasonably be expected of a property owner, such as reporting income from the property, writing checks for the maintenance, insurance, etc., necessary in connection with the operation of the property, paying taxes, and depreciating the property on his income tax return. But at the same time it may be said that Mr. Beatty behaved in a most unbusinesslike fashion in many respects in connection with this entire matter. He bought all of this property, with the exception of the Belmont Street property, without ever having seen any of it. He bought and sold the Hooper Road property, his son acting as his agent at the time o’f the sale, and saw the property physically only after it had been sold. At the time of the purchase of the property he paid a substantial portion of the cash considerations therefor in cash money. He *860 was unable to give the Court anything but an extremely vague explanation of the source of the funds which he used to purchase the various properties. He was not able to particularize these sources with any success whatsoever.
The testimony of Mr. George Roland Beatty, we feel, as did the Trial Judge, is hardly credible. The record shows that at the time he executed these sales to his father, he had a checking account in a Baton Rouge bank which had a balance in excess of $2,000.00. It seems incredible that a business man engaged in owning and renting real estate, possessed of a checking account with a substantial balance would take the sum of $10,000.00 in cash and keep it between the pages of books in his office. We are strongly impressed with the possibility that Mr. Beatty did not receive the cash considerations recited in the various sales. In substance, we agree with the Trial Judge that the credibility of the testimony given by the two defendants is less than sterling.
Article 2480 of the Civil Code establishes a presumption of simulation in all cases where the thing sold remains in the possession of the seller, and requires the parties to produce proof of good faith and to establish the reality of the sale. This article reads as follows:
“In all cases where the thing sold remains in possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.”
Applying this article to the facts in this case, with reference to all of the pieces of property conveyed, leads us to the obvious fact that George Roland Beatty continued in possession of all of the property after the execution of the acts of sale of the property to his father. The character of his possession of the various properties never changed. In addition to remaining in possession of the Belmont Street property, ostensibly as a tenant, Mr. Beatty was given a usufruct over the property by his father, and strangely enough, even after having obtained the usufruct from approximately two months after his father’s acquisition of the property, continued to pay rent to his father in the amount of $90.00 per month, which he testified he was still paying at the time of the trial. Mr. Beatty continued to collect the rent from the balance of the property just as he had prior to the sales. The record having clearly established that Mr. George Roland Beatty continued in possession of all the property in question, after having sold the property to his father, imposes on Mr. George Rol- and Beatty and his father the burden of producing proof of the good faith of the transactions and of establishing the reality of the sales. Clearly, that burden was theirs in this proceeding. We have previously quoted the Trial Judge and expressed our own views with reference to the circumstances surrounding these various transfers, and the credibility of the testimony of the two defendants in relation thereto. Suffice it to say that we believe that the defendants have woefully failed to bear the burden of proof imposed upon them by Article 2480 of the Civil Code. In the light of the entire record, we believe their documentary evidence and oral testimony is grossly insufficient to preponderate over the presumption established by the Codal Article.
In the case of Agricultural Supply Company, Inc. v. Lavigne, 179 La. 1030, 155 So. 764, the Supreme Court, in dealing with a fraudulent conveyance of property, stated the following:
“ * * * [t]he article [2480 of the Civil Code] declares that where a person remains in possession of property that he sells there is a presumption that the sale is simulated. The presumption is strengthened if the seller is insolvent and is being sued, and if the sale is made *861 to a close relation of the seller, and if the price is said to have been paid in currency, so that there is no bank record or voucher to evidence the payment of the price. On that subject, see Peyton v. Roth, 149 Louisiana 150, 88 So. 773, 776.”
In Peyton v. Roth, supra, the Supreme Court, in annulling two sales as simulations, stated:
“Beyond the testimony of the defendant and his wife, and the declaration in Schlumbrect’s will, there is no evidence whatever that he received any consideration for either sale. He was conducting an ice business at the time of the sales, and kept a bank account, in which he made regular deposits and on which he drew checks for his expenditures, and the bank statement does not show that he ever deposited either the $1,500 or the $800 supposed to have been received from defendant, or that he made any unusual deposit on or after either of the sales. There is no evidence that he had either the $1,500 or the $800, or any such sum of money, in his possession, or that he ever spent or invested any such sum after either sale. * * * Our conclusion is that defendant has failed to overcome the presumption established by Article 1480 of the Civil Code and the strong circumstantial evidence supporting that presumption.”
We believe it abundantly clear that the language employed by the Supreme Court in these two cases applies to the facts in this particular case. We have a sale made to a close relation of the seller wherein the price is said -to have been paid in currency, and there being no bank record to evidence the payment of the price, coupled with an apparent reason for the transfer. George Roland Beatty was employed as a life insurance salesman, and at the time of the sales, he kept a bank account in which he made regular deposits and on which he regularly drew checks. The bank statements for the period of the sales does not show that he ever deposited any of the cash considerations recited in the various deeds, and as a matter of fact, Mr. Beatty testified that he did not deposit these amounts.
Accordingly, we hold that those certain acts of sale executed by George Roland Beatty to William Martin Beatty under dates of December 20, 1957, December 23, 1957, December 24, 1957, and August 27, 1958, conveying the property described hereinabove, to be simulations, and as such, to be null, void, and of no effect. We further hold that all of said property belongs to the community of acquets and gains which formerly existed between George Roland Beatty and Ethel Landers Beatty.
Reversed and rendered, defendants to pay all costs of court.
Judgment reversed.