326 So.2d 565 (1976)
Covey W. INGRAM, Plaintiff-Appellee,
v.
Joe FREEMAN et al., Defendants-Appellants.
No. 5308.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1976.
Rehearings Denied March 4, 1976.
Writs Refused April 7, 1976.
Watson, Murchison, Crews & Arthur by R. Raymond Arthur, Gahagan & Gahagan by Russell E. Gahagan, Natchitoches, for defendants-appellants.
Edwin Dunahoe, Natchitoches, Henry A. Politz, Shreveport, for plaintiff-appellee.
Before CULPEPER, DOMENGEAUX and PAVY, JJ.
DOMENGEAUX, Judge.
This is an action to annul a sale as being a simulation. Plaintiff-appellee, Covey Ingram, obtained an award for personal injuries inflicted upon him by the defendant-appellant, Joe Freeman. In the same suit the plaintiff also obtained a judgment annulling the transfer of property by defendant Freeman to his sister and co-defendant, Pearl Freeman Jones. From this latter judgment annulling the sale of the *566 property between them, Pearl Freeman Jones and Joe Freeman have appealed. Plaintiff has answered the appeal seeking a judgment holding Pearl Freeman Jones liable in solido with her brother, Joe Freeman, for the amount of the injuries caused to plaintiff by the latter.
On August 12, 1970, Joe Freeman and his minor son, Donnie Joe Freeman, brutally and severely beat the plaintiff in a thirty minute attack near Robeline, Natchitoches Parish, Louisiana. The beating was so extensive that his family physician of thirteen years was unable to recognize him while rendering initial treatment at the emergency room of the Natchitoches Parish Hospital.
The following day Joe Freeman and his sister, Pearl Freeman Jones, consulted an attorney in the City of Natchitoches and had him prepare a document whereby the former executed a mortgage from himself to a future holder for the sum of $15,000.00. This mortgage encompassed a certain 80 acre tract of land in Natchitoches Parish, including all buildings and improvements thereon. This acreage constituted essentially all of Joe Freeman's property. The act of mortgage made reference to a promissory note in the amount of $15,000.00, payable to the maker (Freeman) and endorsed by him in blank. This note was allegedly given to Pearl Freeman Jones for future advances.
On August 27, 1970, the note was surrendered to the Clerk of Court in Natchitoches Parish and the mortgage on the abovementioned property was cancelled. On that day the defendant appeared before the same attorney and executed an act of sale by which the formerly mortgaged property (with the addition of all furniture and fixtures located in the house situated on the premises and all farm equipment located "on the place" including a tractor, disc, buster, and plows) was sold to Pearl Freeman Jones by her brother for the consideration of $15,000.00 "Cash in hand paid, the receipt of which is hereby acknowledged".
Several months thereafter plaintiff filed suit for damages resulting from the beating and further sought to annul the sale of this property between the defendants. Subsequently the District Court rendered judgment in plaintiff's behalf against Joe Freeman and Donnie J. Freeman in solido for $37,917.75. That portion of the judgment has not been appealed.
We are presented with two major issues for determination by this appeal:
1. Was the sale of the abovementioned property from Joe Freeman to Pearl Freeman Jones a simulation?
2. If said sale was a simulation, is Pearl Freeman Jones liable in solido for the total amount of the judgment originally rendered against Joe Freeman?
There are two manners in which a presumption of simulation arises. The first is based upon Civil Code Article 2480 which reads:
"Art. 2480. Retention of possession by seller, presumption of simulation
In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale."
See Radovich v. Jenkins, 123 La. 355, 48 So. 988 (La.1909); Harper v. Rosenblath, 227 La. 507, 79 So.2d 863 (La.1955); Dare v. Myrick, 226 La. 732, 168 So.2d 845 (La.App. 2nd Cir. 1964); Beatty v. Beatty, 186 So.2d 855 (La.App. 1st Cir. 1966); and Succession of Elrod, 218 So.2d 83 (La.App. 4th Cir. 1969).
The second basis for a presumption of simulation arises when the party asserting *567 the simulation produces evidence which creates a highly reasonable doubt or suspicion concerning the honesty or validity of the transaction. Such a showing establishes a prima facie case of simulation and the burden is thereby shifted to the defendants to demonstrate the validity of the transaction under attack. Smith v. Smith, 239 La. 688, 119 So.2d 827 (La.1960); Teche Concrete, Inc. v. Moity, 168 So.2d 347 (La.App. 3rd Cir. 1964), writ refused 247 La. 251, 170 So.2d 509; Dare v. Myrick, supra; Laborde v. Dauzat, 158 So.2d 637 (La.App. 3rd Cir. 1963), writ refused 245 La. 731, 160 So.2d 595; Landry v. Landry, 140 So.2d 706 (La.App. 3rd Cir. 1962); Howard v. Howard, 96 So.2d 345 (La.App. 2nd Cir. 1957).
An analysis of the facts relevant to this litigation indicates the existence of a sufficient basis for invoking either of the abovementioned presumptions of simulation, thus shifting the burden of proof to the party claiming the validity of the transaction.
Civil Code Article 2480 speaks of retention of possession by a "precarious title". Article 3556 (25) defines precarious possession as follows:
"25. Precarious.That possession is called precarious, which one enjoys by the leave of another, and during his pleasure.
The title which excludes the ownership, such as a lease, is also called precarious."

The very day of the sale, August 27, 1970, Joe Freeman and Pearl Freeman Jones entered into a lease agreement whereby the former was to lease the property transferred in the sale from his sister for a period of one year at a rate of $25.00 per month.[1] The lessee retained an option to renew the lease for an additional one year period provided that written notice was given to the lessor within thirty days of the termination of the original lease. The lease was prepared by the same attorney and notary who drew up the mortgage and sale involving said property. In fact, the "vendor-lessee", Joe Freeman, never surrendered the property to his sister. Clearly Mr. Freeman continued his occupancy by virtue of the purported lease in such a fashion as to raise the presumption of a simulation as described in Article 2480.
The circumstances surrounding the "sale" were also of such a nature as to raise a reasonable doubt as to the honesty of the parties. The consideration for the sale was allegedly made in two ways. First, a cancelled check for the amount of $5,000.00 was introduced into evidence. The check is drawn on the City Bank and Trust Company of Natchitoches, Louisiana, dated April 11, 1963, and shows Joe Freeman as the payee and J. L. Jones as the drawer. This check was allegedly a loan made by J. L. Jones, the brother-in-law of Joe Freeman and husband of Pearl Freeman Jones. However, there was no evidence of the loan such as a note or mortgage. The parties to the sale testified that $5,000.00 of the consideration for the sale was made by cancelling the seven year old debt for that same amount owed by Joe Freeman to his sister and her husband. However, although the $5,000.00 check was drawn by Mr. Jones and apparently was a loan made by the community, the property was purchased by Mrs. Jones, alone, as her separate and paraphernal property.
The balance of $10,000.00 due to Joe Freeman was allegedly paid in cash which was carried in a paper bag. The attorney *568 and notary testified that a paper bag was brought into his office and placed on a corner of his desk but that it was never opened and that he never saw the actual exchange of the money. Although two of the defendants' other sisters testified that they actually saw the transfer and counting of the money after the parties to the transaction left the attorney's office, the trial judge dismissed their testimony in its entirety. As the trial judge stated:
"Taking into consideration the timing of the beating of the plaintiff, the mortgage, the deed, and after rejecting in full the testimony of Mr. Freeman and his sisters, the Court holds that the deed of August 27, 1970 recorded in Conveyance Book 293 at Page 269 of the records of Natchitoches Parish is a pure simulation . . . . ."
Thus, obviously, the trial judge felt that the circumstances surrounding this conveyance of property from brother to sister raised substantial doubt in his mind as to the motive and purpose of the transaction. With the trial judge's factual finding, we are in agreement. Therefore the presumption of simulation is also invoked by the factual context surrounding the alleged sale of the property in question.
At this point it becomes incumbent upon defendants to prove the validity of the sale.
In support of the defendants' assertion of an honest motive for their entry into the contract of sale involving this property those parties presented evidence which was obviously less than convincing to the trial judge. The alleged account of the payment of the sale price was patently suspicious. The defendants failed to support their contention that the alleged $5,000.00 loan ever took place. As we previously stated, there was neither a note, a mortgage, a co-signor, nor any other evidence which would indicate an indebtedness for such an amount.
Likewise the testimony concerning the transfer of the $10,000.00 in cash in a brown paper bag is difficult to accept. Joe Freeman was unable to satisfactorily account for the $10,000.00 which he claims to have received for the property. He testified that he gave it to a girlfriend in New Mexico for use in the remodeling of her house. However, this girlfriend was never produced nor was she even identified by name. There were no bank statements indicating deposits and withdrawals to support this claim of receipt of the funds. Neither were there receipts or other evidence to show the alleged work was performed on the house in New Mexico.
Also questionable was Joe Freeman's alleged motive for selling the property. This defendant claimed that his only desire was to dispose of his land, take the money, and leave the area, to perhaps work or settle in another part of the country. However, it was established at trial, that another individual had previously been negotiating for the same property but minus the farming equipment and household items and was offering a price of approximately $25,000.00. If Joe Freeman was interested in selling the property and leaving, surely he would have sold it to the highest bidder. Defendant's credibility is further weakened by the fact that he entered into a year's lease of the property on the same day of the sale. This act certainly belies his intention to obtain his money and leave.
At the trial, an individual, Charles Strahan, testified that he leased the property from Mrs. Jones for pasture land and that he paid her the sum of $200.00 per year. However, this payment was also supposedly made in cash, there were no receipts for the payment, and Mrs. Jones never reported any rental income from Mr. Strahan on her income tax forms for the years in which the lease was to have been in effect. Joe Freeman claimed that he leased only the house on the property and the rest was possessed by Mr. Strahan. The defendants introduced a year's worth of monthly rental *569 receipts for $25.00 supposedly evidencing rental payments from Joe Freeman to Pearl Freeman Jones. However, these alleged payments were claimed to have been made in cash, and there is no evidence outside the testimony of the parties to support the claim for the rental compensation.
Mrs. Jones also failed to declare any rental income from the "lease" to her brother. In fact a study of Mrs. Jones' tax returns for the years 1970, 1971, 1972, and 1973 indicates that she declared no income from rental property whatsoever. If, in actuality, she had leased this 80 acre tract to her brother and Mr. Strahan, Mrs. Jones should have reported rental income of $300.00 for two of the years, and $500.00 for the other two years. The lease agreement between Mrs. Jones and Mr. Strahan was purportedly an oral one, and again there was no proof of the contract outside the testimony of the parties. There was also no indication that the lease agreement between the two defendants had ever been extended beyond the original one year period, although Joe Freeman continued to reside on the property after the original "lease" terminated in August of 1971.
In support of Mrs. Jones' claim of valid ownership of the property, she introduced the property tax receipts for the four year period commencing in 1970. However, these receipts are hardly conclusive evidence of ownership. Since Mrs. Jones was listed as owner of the property in question as a matter of record, it is only normal procedure that she would be billed by the Sheriff for the taxes due on the property. There was no evidence introduced to show how or by whom the taxes were actually paid. Mrs. Jones also introduced an insurance policy covering the dwelling and contents located on the tract of land in which she is listed as the policyholder. In light of the aforementioned evidence, the existence of the insurance policy is insufficient to establish Mrs. Jones' ownership of the property.
Since there was no substantial documentary evidence to support a valid motive for the "sale", the outcome of this litigation rests ultimately on the credibility of the witnesses and the circumstances surrounding the conveyance. The factual context of the transaction is certainly suggestive of an improper motive for the transfer of the property. As to the credibility of the witnesses, the trial judge stated:
"The Court accepts fully and without reservation the testimony of the plaintiff's witnesses. The testimony of Joe Freeman, Mrs. Pearl Freeman Jones, Charles Strahan, Mrs. Effie Neubine and Mrs. Cammie Moses [sisters of the defendants] individually and collectively is rejected as being untruthful, unreliable and untrustworthy. The Court does not believe that there was $10,000.00 in cash in the unopened paper sack on the attorney's desk at the time the deed was passed and finds that the check of April 11, 1963 had nothing whatsoever to do with the deed of August 27, 1970.
. . . . . .
The Court had opportunity on January 30, 1973 and on June 12, 1975 to observe the testimony, demeanor and actions of the defendant as he testified and participated in the trials." (Brackets added)
Bearing in mind that the burden of proof is shifted to the defendants by the presumptions discussed hereinabove, and after considering all the evidence pertinent to this litigation, we conclude that the trial judge had a reasonable basis for finding that the sale of the tract of land from defendant Freeman to defendant Jones was a simulation, and we agree with his ruling annulling said transaction.
We must now consider whether by becoming a party to the simulated sale, Mrs. Pearl Freeman Jones should be held liable in solido with Joe Freeman for the total amount of the judgment resulting from the personal injuries inflicted upon the plaintiff by the latter.
*570 Plaintiff contends that by conspiring with her brother to shield the property in question, Pearl Freeman Jones incurred liability in solido with him for the judgment of $37,917.75 originally rendered against the latter. Plaintiff bases his theory of liability on Civil Code Article 2324 which reads:
"Art. 2324. Liability for assisting or encouraging wrongful act
He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act."
In the alternative plaintiff asserts Mrs. Jones' liability under Civil Code Article 2315, the pertinent part of which reads:
"Art. 2315. Liability for acts causing damage; survival of action
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
However, the above cited Codal provisions both require the existence of damage before the liability of a tortfeasor ensues. A conspiracy alone is not civilly actionable, and there must be some showing of harm to the claimant before recovery will be allowed. See Cogswell v. Board of Levee Commissioners of Orleans Levee District, 213 La. 817, 35 So.2d 743 (La.1948); Louisiana v. McIlhenny, 201 La. 78, 9 So.2d 467 (La.1942); Tabb v. Norred, 277 So.2d 223 (La.App. 3rd Cir. 1973), writ denied 279 So.2d 694.
In the instant case Mrs. Jones' participation in the simulated sale of her brother's property was an act separate and apart from the original tort committed upon the plaintiff. Therefore Mrs. Jones can in no way be said to have conspired in the commission of that original tortious act. Her only liability might possibly lie in the value of the property "sold" if that property had then been disposed of to plaintiff's detriment. However, the District Court declared Joe Freeman to be the owner of said property, thus placing it within the reach of the plaintiff as judgment creditor. Under the facts and circumstances of this litigation we conclude that Mrs. Jones is not liable to plaintiff under the tort theories expressed in C.C. Articles 2324 and 2315.
For the above and foregoing reasons the judgment of the District Court is affirmed. Costs of this appeal are assessed against the defendants-appellants.
Affirmed.
NOTES
[1] According to the terms of this "lease" Joe Freeman was to rent only the house located on the property and not the bulk of the acreage itself. However, there is difficulty in ascertaining exactly what portion of the property Freeman actually possessed since even prior to the "sale" his use of the property was limited primarily to the house and immediate land.