GULOTTA, Judge.
Plaintiffs, the forced heirs of their father, Marion R. Gerchow, claim entitlement to their forced portion of improved real property located at 4208 Clay Street in Metairie, Louisiana. Plaintiffs assert that the property was acquired by their father during the existence of the community with their mother and that following a divorce of their parents, the decedent acquired full ownership. On the other hand, defendant, plaintiffs’ paternal grandmother, claims ownership of the property through a counter letter executed on the same day that decedent purchased his judicially separated wife’s interest. Defendant further relies on the statement in Marion’s will that the disputed property belongs to his mother, had been held in his name solely for purposes of convenience, and had been purchased and improved with funds belonging to his mother.[1]
The trial judge rendered judgment in favor of plaintiffs, concluding that the counter letter was “simulated.” Plaintiffs were recognized as owners of an undivided two-thirds interest in the disputed property and defendant was recognized as owner of an undivided one-third interest.
*1203 Appealing, defendant contends that plaintiffs’ suit is in the nature of a petitory action requiring proof of title. According to defendant, plaintiffs have failed to establish a valid title since the only evidence of title in Marion R. Gerchow is a copy of a sale and resale through a homestead when the decedent apparently acquired title. According to defendant, this transaction is a mere pignorative contract or security device by which nothing is actually acquired. Defendant further contends that the counter letter is in authentic form, that no evidence was adduced to disprove the payment of consideration by her, and, therefore, that the court erred in finding the counter letter to be a “simulation.” Defendant further argues that the recitation in decedent’s will, which states that the disputed property is not part of his estate, is itself a counter letter showing title in her favor.
Marion and his wife Eleanor purchased four adjoining lots in Metairie in 1959. One house, later designated by the municipal number 4212 Clay Street, had been built on two of the lots. In 1964, a house designated by municipal number 4208 Clay Street, was constructed on the remaining two lots and was occupied by defendant. It is this property that is the subject of the dispute.
Marion and Eleanor separated in 1971. On May 21, 1973, while the parties were legally separated but not divorced, Eleanor signed an act of sale transferring her one-half interest in the entire property, both municipal numbers 4208 and 4212 Clay Street, to Marion for $4,900.00.
On the same day as the transfer to him of Eleanor’s one-half interest, May 21, 1973, Marion executed, in authentic form, the counter letter. In this notarized document, Marion declared that he had purchased a one-half undivided interest in 4208 and 4212 Clay Street and further stated:
“That in truth and in fact appearer has no interest in said property, that the same was purchased by him for the account of Wilhemena Walker Gerchow, or her nominee, at such time as appearer is called upon to do so, an instrument transferring to the said Wilhemena Walker Gerchow all rights, title and interest that appearer has or may have in and to the said property [sic].”
Also on May 21, 1973, Marion signed a statutory will bequeathing to Wilhemena all of the disposable portion of his estate and confirming the legitime of two-thirds of his estate to his three children, the plaintiffs in the instant case. This will contains the following recitation:
“I show in this, my will, that the property located at 4208 Clay Street in Jefferson Parish, Louisiana is in point of fact the property of my mother and that it has been held in my name solely for purposes of convenience, but that the property was in truth purchased with funds belonging to my mother and the improvements erected thereon also with funds belonging to my mother, Wilhemena Walker Ger-chow.”
Marion and Eleanor were divorced in 1977 and subsequently they executed a second act of sale, dated October 3, 1977 whereby Eleanor transferred the same one-half interest in the Clay Street property to Marion. Marion received no further consideration for this transfer, however, and it is apparent that the parties were merely confirming the 1973 sale. On October 8, 1977 Marion sold the lots and improvements at 4212 Clay Street to third parties. Marion received the proceeds from this sale.[2]
At the outset, we are not impressed with defendant’s claim that plaintiffs failed to establish ownership of the disputed property by the decedent. Irrespective of whether the sale and resale document is a pignorative contract as claimed by defendant, and whether plaintiffs’ instant suit is viewed as a petitory action or an action by forced heirs to attack a simulation, it is clear from the act of sale and defendant’s testimony, that Eleanor and Marion acquired title to the property in 1959. No further discussion of this question is either *1204 necessary or warranted. The crucial question is whether or not the counter letter is a simulation.
Although a counter letter in authentic form may be self-proving,[3] LSA-C.C. Art. 2239, dealing with the force and effect of counter letters, provides that forced heirs have the right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit.[4] See also Succession of Lewis, 157 So.2d 321 (La.App. 4th Cir. 1963). Where a plaintiff alleging a simulation produces evidence of circumstances that create highly reasonable doubts or suspicions concerning the validity of a transaction, such a showing establishes a prima facie case of simulation and shifts the burden to the defendant to demonstrate the validity of the transaction under attack. Smith v. Smith, 239 La. 688, 119 So.2d 827 (1960); Ingram v. Freeman, 326 So.2d 565 (La.App. 3rd Cir., 1976), writ denied 329 So.2d 755 and 757 (La.1976).
We believe the circumstances surrounding the existence of the counter letter are suspicious. This document makes reference to 4208 and 4212 Clay Street. However, decedent sold 4212 to a third party on October 8, 1977, and received the proceeds from the sale, but defendant makes no claim against the funds derived from that sale. Moreover, although the will bears the same date as the counter letter, May 21, 1973, reference was made in the will only to 4208 Clay St. Furthermore, the date of the counter letter executed on the same day that the property was transferred to Marion by his judicially separated wife, as well as the execution of the will on the same day, suggests decedent was motivated by desire to shelter the property from any later claims by his estranged wife in the event of his death before the divorce became final.
Marion purchased Eleanor’s undivided one-half interest in 4208 and 4212 Clay St. for $4,900.00. Although Wilhemena stated in deposition that she had gone to the attorney’s office and that papers had been signed to make her the owner of the Clay St. property, she had no knowledge of any counter letter or of Marion’s purchase of Eleanor’s community share of the property. She did not remember giving her son $4,900.00 for the sale price and could not remember the date of the meeting in the attorney’s office. She stated that she paid to build a house on 4208 Clay St. but did not own the ground. She stated also that she had given her son $1,500.00 to build a house in Slidell.
Eleanor testified, on the other hand, that she and the decedent had paid for the construction of the house at 4208 Clay St. and that she had not received any money from her mother-in-law for transferring her interest in the property to decedent. Significant also is the fact that subsequent to decedent’s purchase of his wife’s interest he, and not defendant, received rental income from 4212 Clay St. This does not comport with defendant’s ownership of both pieces of property, but rather indicates Marion continued to treat the property as his own despite the counter letter.
*1205 The evidence considered, we hold that plaintiffs established a prima facie showing that the counter letter was a “simulation.” In such instance it then becomes defendant’s burden to demonstrate the validity of the transaction. Defendant failed to carry that burden.
Having so concluded, we affirm the judgment of the trial court.

AFFIRMED.

. Marion’s will bequeaths all the disposable portion of his estate to his mother and confirms the legitime of two-thirds of his estate to plaintiffs, his children.

. The third parties are not named in the instant suit and there is no issue before us concerning the ownership of the property or sale proceeds of 4212 Clay Street.

. LSA-R.S. 13:3720, in pertinent part, provides:
“§ 3720. Instruments attested by witnesses and accompanied by affidavit; admissible in evidence.
Any deed, counter letter, power of attorney, declaration, contract, or other instrument, under private signature, purporting to be attested by two or more witnesses and accompanied by an affidavit of the vendor or grant- or that the same was signed or executed by him, or by an affidavit of one or more such witnesses, made at or after the signing and execution of such deed, counter letter, or other instrument, and setting forth substantially that the instrument was signed or executed by the party or parties thereto in the presence of the affiant or affiants, shall be deemed, taken and accepted, prima facie, and without further proof, as being true and genuine, and shall be so received and accepted in evidence in the courts of Louisiana, without further proof”

. LSA-C.C. Art. 2239 reads as follows:
“Art. 2239. Counter letters, force and effect Art. 2239. Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others; but forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, and shall not be restricted to the legitimate [legitime].”