446 So.2d 867 (1984)
Brian WILSON, Plaintiff-Appellant,
v.
PROGRESSIVE STATE BANK & TRUST COMPANY, Defendant-Appellee.
No. 16054-CA.
Court of Appeal of Louisiana, Second Circuit.
February 21, 1984.
*868 Bruscato, Loomis, Deal & Street by Albert E. Loomis, III, Monroe, for plaintiff-appellant.
Traylor & Kramer by Chet D. Traylor, Winnsboro, for defendant-appellee.
Before HALL, JASPER E. JONES and SEXTON, JJ.
SEXTON, Judge.
Plaintiff filed suit seeking damages from defendant for seizing and selling a pickup truck and welder. The defendant answered, alleging that the act of sale by which the plaintiff purported to obtain the pickup and welder from his father was fraudulent and void. The trial court found in defendant's favor. We affirm.
Plaintiff in this cause is Brian Wilson, aged 20, an offshore worker residing in Franklin Parish. Plaintiff's father is Sherman Wilson. Defendant is Progressive State Bank & Trust Company (hereinafter referred to as Progressive).
On February 15, 1983, plaintiff Brian Wilson filed suit against defendant Progressive for the wrongful seizure and sale and/or tortious conversion of the pickup and welderwhich were allegedly owned by Brian Wilsonpursuant to a judgment rendered against Brian's father, Sherman Wilson. Defendant Progressive alleged in its answer that the pickup and welder which it has seized and sold were owned by its judgment-debtor Sherman Wilson, not Brian Wilson; and that the alleged sale of these chattels by Sherman to Brian was merely a sham or simulated sale. At trial, plaintiff introduced into evidence separate bills of sale to the pickup and welder, by which these chattels were allegedly conveyed by Brian to Sherman Wilson. The plaintiff also introduced certificates of registration and title listing Brian Wilson as the legal owner of the 1969 Dodge.
In a judgment rendered July 31, 1983, the trial court rejected plaintiff's claims, finding that the purported sale of the pickup and welder was merely a simulated sale; that the truck and welder were still owned by Sherman Wilson; that the chattels were therefore appropriately seized and sold pursuant to a judgment obtained against Sherman Wilson; and that therefore Brian Wilson had no legal damages claim herein. In appealing, plaintiff's single specification of error provides the only issue in the case. The plaintiff contends *869 that the trial court erred in placing the burden on the plaintiff to show that a simulation occurred, and in thus holding that plaintiff had failed to carry that burden.
A simulated sale is one in which the parties do not have genuine intent to transfer or convey property, even though such sale be clothed in concrete form or legal formalities. It is a formal contract without existence in fact, and generally embodies a conspiratorial understanding between the parties against third persons in which the parties "place their property and rights in the name and under the control of others, without any consideration whatever, and without the intention of ownership being actually transferred." Viguerie v. Hall, 107 La. 767, 31 So. 1019, 1022 (1902). A simulated sale does not transfer property, and it occurs where the parties have no good faith intent to transfer ownership. It is a sham, and as a result, an absolute nullity. See, generally, Russell v. Culpepper, 344 So.2d 1372 (La. 1977); Succession of Terral, 312 So.2d 296 (La.1975); Hall v. Allred, 385 So.2d 593 (La.App. 3d Cir.1980); Bell v. Bell, 339 So.2d 1333 (La.App. 3d Cir.1976); Adams v. Trichel, 304 So.2d 740 (La.App. 2d Cir. 1974).
A simulation may be proved by indirect or circumstantial evidence since, by its inherent nature, a simulation often only admits of circumstantial proof. Dare v. Mynick, 168 So.2d 845 (La.App. 2d Cir. 1964). The burden of proof is ordinarily placed upon he who attacks a sale as a simulation. However, when a legal presumption of simulation is applicable, the burden of proof shifts to the party to the sale to establish that it was authentic and not merely a simulation. Louisiana law contains both a codal and a jurisprudentially based presumption of simulation. The codal presumption emanates from Civil Code Article 2480 and is applicable where the vendor retains possession of the thing sold under usufruct or precarious title. The jurisprudential presumption is applicable where the evidence establishes the existence of facts and circumstances which create a highly reasonable doubt as to the reality of the putative sale. Where either the codal or jurisprudential is applicable, the burden of proof shifts to the party to the purported sale to establish its actuality. To rebut this presumption, the party to the purported sale must establish a good faith transaction resulting in a true alienation of ownership for consideration. Russell v. Culpepper, supra; Dietz v. Dietz, 80 So.2d 414 (La.1955); Boagni v. Waterbury, 403 So.2d 856 (La.App. 3d Cir.1981); Roy v. Roy, 382 So.2d 253 (La.App. 3d Cir.1980); Ingram v. Freeman, 326 So.2d 565 (La. App. 3d Cir.1976); Grant v. Anderson, 306 So.2d 853 (La.App. 2d Cir.1975).
We conclude that the trial court was not manifestly erroneous in finding that the purported sale by Sherman Wilson to Brian Wilson of the truck and welder was a simulation. The codal presumption of simulation may not have been applicable herein since there was no showing of a usufruct or a precarious title. However, the jurisprudential rule which shifts the burden of proof to the vendor or vendee to establish the actuality of the sale was applicable here, because of circumstances creating a highly reasonable doubt as to the reality of the transfer which will hereinafter be detailed. Thus, the burden of proof here was properly placed on Brian Wilson to establish the validity of the sale, and not on Progressive to prove its invalidity.
Progressive's judgment against Sherman Wilson, which the truck was seized to satisfy, was rendered on June 17, 1982 in the amount of $2,821.90. The judgment resulted from a petition for a deficiency judgment subsequent to executory process on a mobile home which Progressive had seized.
The plaintiff Brian Wilson contended that he agreed to purchase the pickup and welder from his father in mid-June of 1982, and at that time paid his father half of the cash price of $1,900.00. He testified he paid the second installment in cash on July 18 at the house trailer of Sherman's mother, Malloy Thornton, who was deceased by the time of the trial. No receipt was given for this cash sale.
*870 Donald Gene Austin, a friend and roommate of Brian Wilson, testified that on July 18, he saw Brian Wilson hand his father, Sherman, some money at Malloy Thornton's trailer. However, Mr. Austin could not determine the amount of money paid. Mr. Austin also testified that separate bills of sale for the pickup and welder were signed, as was the title to the pickup.
The writ directing the seizure and sale of the pickup and welder issued on July 27. Franklin Parish Deputy Johnny Marshall located Sherman Wilson on August 4 putting gasoline in the truck and informed him of the court order for seizure of the vehicle and welder. The deputy instructed Sherman Wilson to drive the truck and welder to the courthouse. That same evening Deputy Marshall released the pickup to allow Sherman Wilson to drive home and instructed Wilson to return in the pickup the next morning. Wilson returned the next morning, Thursday, August 5, and Deputy Ed Hatten gave Sherman Wilson another extension of time, instructing him to return with the truck and welder the following Monday, August 9.
On approximately August 5 or August 6, Brian and Sherman Wilson went to the law office of Chet Traylor, the attorney representing Progressive, and left a copy of the bill of sale with Mr. Traylor's law partner. This was done in an attempt to put Progressive on notice of the alleged sale of July 18. On the morning of Saturday, August 7, Sherman Wilson took a copy of the bill of sale to the truck to the home of Mr. Traylor in a further attempt to convince him of the change in ownership. The bill of sale presented to Mr. Traylor was not notarized, and apparently did not contain the signatures of any witnesses.
On August 11, a Winnsboro notary public notarized the bill of sale acknowledging the sale of the truck, and he also notarized the certificate of title to the truck. On that same day, these two documents were taken by Brian Wilson to the Department of Motor Vehicles office in Winnsboro, to obtain a certificate of registration in his name to the 1969 Dodge truck.
On August 12, the Dodge truck and welder were seized by a parish deputy at the apartment at which Brian Wilson resided. At some point subsequent to the actual seizure, Brian Wilson took certificates of title to the truck, and the bill of sale to the welding machine, to Progressive Bank officer Gary Willis. Gary Willis testified, however, that although Brian Wilson protested that he was the legal owner of the seized truck, he refused to show the documents of ownership to him (Gary Willis). The seized pickup and welder were sold by Progressive at a sheriff's auction on October 20, 1982.
Thus, sufficient factors exist which would have enabled the trial court to reasonably conclude that Sherman Wilson confected a simulation to place the truck beyond the reach of his creditor. The finding that an actual sale did not occur is bolstered by the fact that Brian Wilson was four months delinquent on a house note at the time of the alleged sale, and the inference may reasonably be made that Brian Wilson did not possess sufficient funds to purchase the truck and welder. Moreover, had the exchange of consideration alleged by Brian Wilson actually occurred, it stands to reason that Sherman Wilson would have utilized the proceeds of the purported sale to pay off the judgment and thereby preclude the seizure. It does not appear that any such attempt was made.
Implicit in the determinations of the trial judge is the rejection of the defense evidence with respect to the giving of consideration. The transfer of title itself is not conclusive evidence of ownership. Ingram v. Freeman, supra. Just as in Ingram, the trial judge in the instant case obviously felt that the circumstances surrounding the timing of this conveyance raised a substantial doubt concerning the motive of the transaction.
It is significant that, prior to the truck's actual seizure, it was the father, Sherman Wilsonand not plaintiff Brian Wilson, the supposed owner of the truckthat made insistent and repeated efforts with both Progressive's attorney and the sheriff's department *871 to delay the seizure. It is worthwhile to note that Deputy Ed Hatten testified that when title to the truck was presented to him on August 5, it was still in Sherman Wilson's name. When Sherman Wilson talked to Chet Traylor, Progressive's counsel, on the morning of August 7, he stated to Chet Traylor that he was attempting to saveand preclude seizureof his own vehicle. It is relevant that Brian Wilson apparently made no protest that the truck was his, until after the seizure was effectuated, this protestation being made to Progressive's officer Gary Willis. Although Brian Wilson testified to the contrary, Deputy Ed Hatten testified that Brian Wilson made no protestation that the truck belonged to him when it was seized on August 12, 1982.
A further important indication that the alleged sale was a simulation is the fact that the truck stayed principally in the possession of Sherman Wilson subsequent to the purported conveyance. Sherman Wilson drove the truck, kept it at his residence regularly, used it to work in, and was found putting gas in it on August 4 when the truck was first constructively seized by Deputy Johnny Marshall of the Franklin Parish Sheriff's Department.
A simulation has in the past been found where a party faces an impending civil liability, and purports to convey the only property that may be used to satisfy the monetary obligation inherent in the civil liability. Ingram v. Freeman, supra. The trial court's judgment is also supported by this court's decision in Grant v. Anderson, supra. In Grant, this court stated that a close relationship between the parties to a sale, the continued possession by the vendor of the object of the sale, and a failure to satisfactorily explain payment of the purchase price are evidentiary factors which militate in favor of a finding of simulation. The Grant court declared the purported sale of a pickup a simulation, where the parties to the alleged sale had a close relationship, and the alleged vendor continued to remain in possession of the pickup.
In summary, the record amply supports the trial court's determination that the transaction was "highly suspicious as being made to avoid the defendant's seizure of the property," and to thus transfer the burden of proof. The further conclusion that the plaintiff did not carry the burden necessary to substantiate his claim is likewise well supported.
The judgment appealed is affirmed at plaintiff-appellant's cost.
AFFIRMED.