McCALEB, Justice.
 

 These suits, which were consolidated for purposes of trial in the district court on motion of the defendants, were brought to annul, on the ground, of simulation, two deeds by Mrs.-Bertha Dietz, the mother of the four plaintiffs, of an 80-acre tract of land-
 
 *806
 
 owned by her in Acadia Parish, being the N% of the SE1/^, Section 18, T. 8, S.R. 1 W., Louisiana Meridian, to two of her sons, John M. Dietz and William G. Dietz. In these acts, which were passed simultaneously, John Dietz was conveyed one-half or 40 acres of the tract, for $2,400 cash and, in the other, William Dietz obtained the remaining 40 acres for a like recited consideration. In addition to John and William Dietz, plaintiffs joined as defendants in the suits two other children of their mother and one grandchild, the sole heir of another child, who predeceased Mrs. Dietz.
 

 After joinder of issue by the general denials of the defendants, a trial was had which resulted in a decree in favor of defendants, the judge being of the opinion that plaintiffs had failed to establish by convincing proof that the sales were simulations or donations in disguise, as alleged in their petitions. Plaintiffs have appealed from the adverse decisions.
 

 Authority for the suits is found under Article 2239 of the Civil Code, as amended by Act No. 5 of 1884, which grants to forced heirs the right to annul by parol evidence the simulated contracts of those from whom they inherit without being restricted to their legitime, and particularly under Article 2444 of the Civil Code providing that:
 

 “The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale”.
 

 As often happens in this sort of case, plaintiffs had no direct proof available to sustain their charges and, consequently, were forced to rely on circumstantial evidence to establish that the purported sales were disguised donations. Hence, they endeavored to show that neither John nor William Dietz had enough money to pay the alleged $2,400 purchase price and that, if money actually changed hands before the notary (the sales being by authentic act before a notary and two witnesses), such money could not have belonged to John and William.
 

 Placed on the stand under cross-examination, John Dietz testified that he had accumulated $2,400 in cash over a period of 15 years; that he had kept the money in a box at his house and counted it frequently prior to the sale. However, he was unable to remember, even approximately, the denomination of the bills which he said he gave to the notary. The alleged sale was made on July 5, 1949 and John Dietz acknowledged that, in the following month, he received his first check from the State Welfare Department, subsequent to his application for relief, which entailed his swearing that he owned no property. It appears that the 40 acres which he acquired was valuable mainly for farming (rice cultivation) ; that he and his family have oc
 
 *808
 
 cupied for many years a dilapidated three-room house located on the land, and he admitted that, following the sale until the time of his mother’s death in July of 1952, she continued to exercise the same acts of ownership over this property as she had prior thereto, that is, that she collected"the one-fifth land rent and the proceeds from an oil lease in the years 1949, 1950 and 1951.
 

 The evidence concerning the genuineness of the sale to William Dietz is not as strong as that presented in the case of his brother. William Dietz testified that he paid his mother the $2,400 in cash which he had been saving at home. While he could not remember the denomination of the bills, he stated that for many years he had earned an income of from $400 to $500 per month working as a “rig runner” in addition to an income of $800 to $1,700 yearly from rice farming. Furthermore, the record is silent respecting his mother’s exercise of dominion and control over William Dietz’ 40 acres after the date of the sale. There is no testimony as to whether she continued to collect the rents and, since the oil lease is not in evidence, we cannot ascertain whether it covered the entire 80 acres owned by Mrs. Dietz or was limited to the 40 acres she conveyed to John Dietz.
 

 The defendants did not see fit to offer any evidence to corroborate their statements that they paid their mother the stated consideration at the time the acts were simultaneously passed, notwithstanding the fact that the notary, before whom the acts were executed, and at least one of the witnesses to the acts, were present and available to give testimony.
 
 [1]
 
 Their counsel take the position that production of supporting evidence was unnecessary as it was the duty of plaintiffs to establish by convincing, if not irresistible proof, their charges of simulation. The judge agreed with counsel, opining that plaintiffs, having the burden of sustaining by convincing proof their charges that the acts were donations in disguise, should have called the notary and witnesses to the deed and that their failure to do so warranted a presumption that, had these witnesses been called, they would have testified to facts which would have weakened plaintiffs’ case. To support his finding that the evidence in the cases was insufficient to shift the burden of proof to defendants, the judge relied heavily on the decisions of Carter v. McManus, 15 La.Ann. 641; Moore v. Wartelle, 39 La.Ann. 1067, 3 So. 384; Blackman v. Brown, 155 La. 959, 99 So. 711 and Bourgeois v. Bourgeois, 202 La. 578, 12 So.2d 278.
 

 The holdings in those matters are to the effect that evidence which merely casts a suspicion on the verity of a sale by a parent to his child is inadequate to justify a decree of annulment and it is remarked in Moore v. Wartelle and repeated in Blackman v. Brown [155 La. 959, 99 So. 713], that:
 

 “The law does not favor actions by forced heirs to undo transactions of
 
 *810
 
 their ancestors as done in fraud of their rights. Such actions can only succeed where the proof adduced in support thereof is convincng, if not irresistible.”
 

 While it is indubitably correct that the proof adduced in these cases must be sufficient to convince the court that the act is a sham, we entertain grave doubt as to the soundness of the statement in Moore v. Wartelle and Blackman v. Brown, that the law does not favor actions of this type by forced heirs.
 
 [2]
 
 It appears to us that Article 2444 is founded on the cardinal principle of the Louisiana law of inheritance of equality between heirs of the same degree, see Montgomery v. Chaney, 13 La.Ann. 207, and that this was the underlying reason for its incorporation in our Civil Code.
 
 [3]
 

 So we hold, in conformity with the provisions of Article 2444, that plaintiffs had the burden of proving by preponderating or convincing evidence that the sales attacked herein were without consideration. But this does not mean that the defendants were relieved of all obligation to produce evidence readily available to them in rebuttal of circumstantial proof, when that proof casts doubt upon the verity of the transactions in contest. In the case of the sale of John Dietz, we experience no difficulty whatever in resolving that plaintiffs have made a prima facie case and that the burden of proof was placed squarely upon that defendant to establish the reality of the sale. Article 2480 of the Civil Code provides:
 

 “In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.”
 

 Here, it is admitted by John Dietz that his acquisition from his mother produced no change whatever in the dominion and control of the property — for, although he was living in a small house thereon, his mother continued to collect the rents which came due from the farming operations and the oil lease. In such circumstances, Article 2480 is applicable. Peyton v. Roth, 149 La. 147, 88 So. 773.
 

 Since defendants have failed to come forward with proof to rebut the presumption that the sale to John Dietz was
 
 *812
 
 simulated, we would be justified in annulling that transaction. On the other hand, although the circumstances surrounding the sale to William Dietz cast suspicion on its genuineness, the evidence adduced is too scant to shift the burden of proof onto that defendant. Hence, a final adjudication of the cases on the record in its present state would require that we annul the deed to John Dietz and uphold the deed to William Dietz. But such a result might not be consonant with justice which no doubt could have been dispensed had the defendants elected to produce the evidence readily accessible to them. Under these circumstances, although defendants have not requested a remand of the cases in order to adduce further testimony, we think it appropriate to exercise the prerogative given us by Article 906 of the Code of Practice of remanding the case to the trial court for the purpose of permitting the defendants to produce the notary and the witnesses to the acts so that their testimony may be heard, together with all other additional evidence which may be tendered by any of the parties litigant on the issues presented.
 

 The trial judge is instructed that, should the defendants fail to produce the witnesses above referred', to without good cause, then the sales are to be set aside as the presumption would.be so great as to render the conclusion of Emulation inescapable.
 

 For the foregoing reasons, the judgment in each of these consolidated cases is annulled and it is ordered that the causes be remanded to the district court for further-proceedings according to law and consistent with the views herein expressed.
 

 The costs of these appeals are to be borne by defendants, John M. Dietz and William. G. Dietz. Taxation of all other costs is deferred until final judgment in the case.
 

 [1]
 

 . The notary and the witness, to which we refer, are the attorneys for the defendants.
 

 [2]
 

 . It is patent that, in making this observation, the court overlooked the injunction of Article 20 of the Civil Code that no distinction should be made between laws, odious or those entitled to favor, “with a view of narrowing or extending their construction * *
 
 *
 

 [3]
 

 . That it is and has been the express policy of our Legislature to protect forced heirs from the simulated contracts of their parent, is shown by the amendment in 1884 to Article 2239 of the Code granting such heirs the right to annul by parol evidence simulated contracts of those from whom they inherit.