AUGUSTINE, Judge.
This appeal concerns the validity of an authentic act of conveyance by which the succession of Albert L. Leard claims title to certain immovable properties located in the City of New Orleans.
In 1967, four years prior to the disputed conveyance to Albert, Katie Miller sold the same properties to her sister, Mary Leard, Albert’s mother. The act of sale was in authentic form and recited a consideration of $50,000.00.
On July 5,1971, Mary executed a counter letter, also in authentic form, which declared that the true owner of the immova-bles was Albert Leard. Mary renounced all interest in the property, stating that her sister Katie had earlier placed the property in her name for the account of Albert Leard, and further, that the earlier conveyance contained a false recital of consideration. The counter letter also defined Mary’s true relationship to the property as merely that of an agent for Albert in “holding said property, collecting rents on his behalf until such time as it was convenient to place the property in the name of the true owner,” it being “always the intention of Mrs. Katie Seary Miller that Albert L. Leard would have complete and sole title and ownership of said property whenever it became convenient for him to place said ownership in his name.” The counter letter concluded with a declaration of Mary’s intent to transfer title to Albert when called upon by him to do so. The letter was recorded on the public records on July 21, 1971. Pursuant to the counter letter, Mary executed an act of conveyance on August 5, 1971, transferring the property to Albert. As before, the act was in authentic form and reveals no technical deficiencies.
Katie died within a year after the conveyance to Albert. She was elderly, and at the time of her death, had been a resident at a nursing home across the river from New Orleans for two years.
Albert died unexpectedly on October 24, 1977, six years after the signing of the counter letter and the second conveyance. His widow, Annie Leard, was appointed testamentary executrix in January 1978 and shortly thereafter filed suit against Mary Leard, seeking to compel the payment into Albert’s succession of those rents collected by Mary as administrator of the properties previously conveyed to Albert. Mary filed an answer and reconventional demand, asserting that the purported conveyance by her to Albert should be declared a nullity, her signature on the counter letter and conveyance having been obtained by fraud and deceit. Mary further alleged that she was the rightful owner of the properties, having been in quiet, uninterrupted possession for more than ten years in good faith by legal title sufficient to transfer the property. Only a few months after filing these responses, Mary died, leaving a will by which she donated the bare legitime to Albert’s four children and the balance of her estate to her daughter,- Cora Lee Sabrier.[1]
Cora Lee subsequently filed a motion to substitute herself in place of her deceased mother, then filed a second action in her own right as forced heir. This suit, styled “Petition to Declare Authentic Act a Nullity,” alleged that Mary’s counter letter and conveyance to Albert were simulations and donations in disguise.
The trial court agreed, finding that the length of time between the sale to Mary and the later execution of the counter letter — four years — was so suspicious as to give rise to the presumption that the conveyance to Albert was a sham. Accordingly, the trial court voided both the counter letter of July 5,1971 and the notarial act of August 5,1971, by which Albert’s, succession claims title. Annie Ruth Leard, testamentary executrix of Albert’s succession, now brings this appeal, seeking reversal of that decision.
*216 As presented to us, this contest is between two apparently valid authentic acts of conveyance, each in contradiction to the other, each purporting to represent the true state of affairs. Broadly stated, the question for our decision is whether the trial court erred in giving effect to the first act rather than the second.
Simulated contracts may be generally classified as either “non-transfer” simulations or as “disguised-transfer” simulations.[2] A “non-transfer” simulation is an act of sale or conveyance, typically in authentic form and containing the requisite recitals of consideration. To all appearances, it is a valid act and is translative of title. In reality, it is a sham, generally enacted for the benefit of the vendor as an aid in fending off creditors; the true intention of the parties is that there be no real transfer of ownership to the “vendee.” The expression of the parties’ genuine intent is commonly reduced to writing in a counter letter, which cites the reality of their transaction and is enforceable by each party against the other.
Although a simulation may be in authentic form, it is vulnerable to attack by forced heirs:
“... forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit and shall not be restricted to the legitimate [legitime].” Louisiana Civil Code Art. 2239. (Emphasis supplied).
Because of the difficulty of proving a simulation — the parties’ primary intent is, after all, to deceive — the Civil Code allows the plaintiff in such an action the benefit of a valuable presumption:
“In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.” Louisiana Civil Code Art. 2480. (Emphasis added).
“Third persons”, as intended by the above article, has been interpreted to include forced heirs. Succ. of Elrod v. Le Ny, 218 So.2d 83 (La.App. 4th Cir.1969).
Possession is retained by the vendor where the sale produces no change in the dominion or control of the property, as where the vendor continues to collect rents from the property with the consent of the vendee, or where the vendor gives every appearance of retaining ownership by paying property taxes and making repairs or improvements. Under such circumstances, the presumption of simulation may be brought to bear against the transaction by which the vendor “conveyed” the property. Dietz v. Dietz, 227 La. 801, 80 So.2d 414 (1955); Peyton v. Roth, 149 La. 147, 88 So. 773 (1921).
Applying the foregoing principles, we find that Cora Lee Sabrier has established a prima facie case of simulation in the conveyance from Mary Leard to her son, Albert. Although Albert and his family lived on one of the properties from 1968 until 1973, testimony adduced at trial proved that it was Mary who remained in “possession” of the properties (as the term is used in Civil Code Art. 2480) long after the apparent conveyance to Albert.[3] Tax *217 records submitted by Cora Lee Sabrier indicated that it was Mary who paid the annual taxes on each of the three properties involved in this suit from the time she received them in 1967 until the time she died in 1979. Thus, despite the “conveyance” to Albert, Mary continued to carry an owner’s burden. During that period, Mary also paid for the insurance on the properties and acted as apparent manager and landlord. When repairs were needed on the premises, it was generally Mary who obtained the repairmen and bore the cost. Again, it was Mary who took the responsibility to advertise the availability of the properties for lease in the local newspaper and who negotiated with prospective tenants when the premises became vacant. Until Albert’s heirs demanded that rents be paid into his succession, there seemed to be no question in the lessees’ minds that Mary was the rightful owner of the property — each month’s rent was paid to her directly, and retained by her with Albert’s complete acquiescence.
It having been proven that after the purported conveyance to Albert, Mary Leard remained in possession of the property, there arises a rebuttable presumption that the counter letter and conveyance to Albert were simulations. Albert’s succession thus assumed the burden of proving the truth of those documents. La.Civil Code Art. 2480.
As previously stated, Albert Leard’s succession contends that the counter letter is the true expression of the reality of this matter. Thus, it is argued, despite the authentic act whereby Katie Miller formally stated her intent to sell her properties to her sister, Mary, Katie’s true intent at that time was to transfer those premises to Albert. According to appellant, the consideration for that conveyance was Albert’s promise to care for Katie in her old age. We are urged to consider several circumstances which lend credibility to Albert’s position:
First, for a time, Katie lived with Albert and his family, during which time Albert bore the whole cost of Katie’s well-being. Appellant contends that later, when Katie entered the Manhattan Manor Nursing Home to spend the last two years of her life, Albert paid the entire cost of her stay.
With respect to management of the disputed properties, appellant’s witnesses testified that Albert assumed the ultimate responsibility for maintenance, often performing minor repairs himself or with the help of friends. On one occasion, for example, Albert completely remodelled the carport of one of the residences. Appellant have also emphasized that it was Albert who interviewed prospective tenants and that it was he who made the final decision as to which of them would be acceptable. While admitting that Albert never actually received the rents from any of the disputed properties, Albert’s succession maintains that that fact is explainable by Mary’s role as Albert’s agent — the rent was consumed by Mary’s “salary” (and by Katie’s expenses in the nursing home).
We do not think Albert’s succession has sufficiently rebutted the presumption of simulation. First, we note numerous difficulties with respect to the asserted cause of the transfer to Albert, for although it is alleged that the primary consideration was Albert’s promise to take care of Katie for the rest of her life, there is no recital of that cause in the counter letter or in the second conveyance. We must, therefore, consider the transaction — if indeed it existed — to have been a gratuitous donation inter vivos. Louisiana Civil Code Article 1536 requires that such donations of immovable property be attended by passage of an authentic act, under penalty of nullity. Sarpy v. Sarpy, 354 So.2d 572 (La.App. 4th Cir.1978), writ ref. 356 So.2d 436 (La.1978). Albert has sought to prove by parol evidence the giving of consideration in the form of financial support and care for the remainder of Katie’s life. Such consideration, however, does not remove the alleged transaction from the operation of Art. 1536 if the value of the immovables transferred to Albert exceeds by half that of Albert’s services. La.C.C. Art. 1526. Pulford v. Dimmick, 107 La. 403, 31 So. 879 (1902).
*218 Albert’s succession has failed to prove the giving of consideration of such value as to dispense with the requirements of Art. 1536, for aside from allowing Katie to live with the family for approximately one year, there was no proof that Albert extended any further support to her during her later stay at the nursing home. The record is devoid of evidence of payment by Albert for what must have been an abundance of fees and medical bills. The lack of such evidence is significant, not only because Albert failed to perform services of such value as to dispense with the need for an authentic act signed by Katie, but because such a deficiency of evidence casts great doubt upon the very existence of any contract between Katie and Albert. Indeed, although Katie was still alive at the time the counter letter was executed, that document does not even bear her signature. It remains that the conveyance to Mary is the sole writing which contains Katie’s own expression of intent to transfer property. Considering that this dispute so intimately concerns Katie’s contractual intent, we regard her unexplained failure to sign the counter letter as a critical deficiency.
Neither are we persuaded to recognize Albert’s ownership of the properties by the minimal control which he exercised over them, for although it may be true that many of the expenses for repairing and maintaining the premises were initially paid by Albert, he was reimbursed by Mary Leard in nearly every instance.[4] And despite appellants’ contention that such reimbursement was merely another example of Mary’s exercise of agency on Albert’s behalf, it is obvious to this court that, in truth, Mary administered the properties for herself. In so holding, we place special emphasis upon Mary’s retention of the full rents from these properties, without any disbursement to Albert whatsoever. That form of “agency” is barely explainable even for the four-year period during which Mary held title, according to the counter letter, “for Albert’s account.” But by the terms of the counter letter itself, that agency was to remain in effect only until execution of the conveyance to Albert and acceptance by him of the properties. Mary’s agency, then, was supposedly extinguished in 1971. It has been proved, however, that for many years afterward, Mary administered the properties with full dominion, a fact which, after 1971, cannot be reconciled with the counter letter. Albert himself never offered the slightest resistance to Mary’s apparent ownership. Given his long acquiescence in Mary’s retention of rents and in her exercise of complete control of the property, we are forced to the conclusion that the counter letter and conveyance did not express the reality under which title was placed in Mary’s name.
Having failed to rebut the presumption of simulation, the appellant cannot prevail. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.

. Her last will and testament was dated November 22, 1977, less than 30 days after Albert’s death, and revoked a previous will,

. We adopt the terminology of Some Aspects of Simulation in France and Louisiana, Thomas B. Lemann, 29 Tul.L.Rev. 22 (1954).

. We do not regard Albert’s possession as having any connection with either the first conveyance or the second. It was not until after his marriage in March 1968, ten months after the first conveyance (on May 24, 1967) that Albert moved with his wife to the Eleanor Street property. During that ten-month interim, Mary administered the property as her own. Although she did not continue such extensive control of that property after Albert’s occupation, neither did she completely relinquish the responsibilities and appearances of ownership, as it was shown that Mary paid many of that property’s significant expenses, including taxes, insurance, and in some cases, even minor repairs. After Albert moved to another residence in 1973, Mary resumed the same pervasive control over that property which she had consistently exercised over the other two.

. There were exceptions. During the period Albert lived on one of the properties — 1968 until 1973 (see footnote 3, supra) — he performed many minor repairs himself without compensation from Mary. And although the record does not contain proof of payment by Albert for major maintenance, neither is there any indication that Mary paid those expenses during that time.