CURRAULT, Judge.
This appeal arises from a judgment denying a petition for writ of mandamus filed by Marion and Betty Fritscher for removal of certain mortgage inscriptions, including judicial mortgages in favor of Lumber Products, Inc. and Commercial Bank and Trust Company. We affirm.
The facts reveal that on February 8, 1980, the appellants sold two pieces of property in Metairie, Louisiana. One piece was a house on Lot 13 of Square 3 of Pontchartrain Shores Subdivision (House) sold to Mr. and Mrs. Tom Hight, and the other was Lot 14 of Square 3 of Pontchartrain Shores Subdivision (Lot) sold to Mr. and Mrs. Richard Polizzi. The act of sale on the house recited a selling price of One Hundred Fifty-Four Thousand Dollars ($154,000) of which Fifty-Five Thousand Eight Hundred Seventy-Five Dollars and Two Cents ($55,875.02) were recited as paid in cash and the balance, Ninety-Eight Thousand One Hundred Twenty-Nine Dollars and Ninety-Four Cents ($98,129.94) was an assumption of a mortgage.
Appellant Fritscher continued to live in the house and lease it under the terms of a lease agreement whereby the amount of the monthly lease payment was equal to the amount of the monthly mortgage payment. A representative of Jefferson Savings and Loan Association indicated that no notice of assumption was received by his company, although such notice was required in the original act of mortgage.
The other piece of property, a lot, was according to the act of sale sold for Fifty Thousand Dollars ($50,000) cash, with approximately Ten Thousand Dollars ($10,-000) paid at the act of sale.
On September 8, 1980, a judgment was entered in favor of Lumber Products, Inc. and against Marion Fritscher in the sum of Four Thousand Six Hundred Thirty-Five Dollars and Thirty-One Cents ($4,635.31) plus court costs, interest and attorney’s fees.
On October 30, 1980, a judgment was entered in favor of Commercial Bank & Trust Company and against Marion Fritscher in the sum of One Hundred Three Thousand Nine Hundred Fifty-Four Dollars and Fifty-Eight Cents ($103,954.58), plus costs, interest and attorney’s fees, subject to a credit.
On February 12, 1981, just over a year from the date of sale of the house and lot, appellant Fritscher filed a petition for bankruptcy in proceedings No. 81-00234 in the United States Bankruptcy Court for the Eastern District of Louisiana. On July 7, 1981, Fritscher was granted a discharge by the U.S. Bankruptcy Court.
On January 15, 1982, an act of sale indicated that the house was sold from Hight back to Fritscher for One Hundred Fifty-Four Thousand Dollars ($154,000) of which Fifty-Five Thousand Eight Hundred Seventy-Five Dollars and Two Cents ($55,875.02) was allegedly paid in cash and the balance, Ninety-Eight Thousand One Hundred Twenty-Nine Dollars and Ninety-Four Cents ($98,129.94) was an assumption of a mortgage. These were the same figures recited in the act of sale dated February 8, 1980 from Fritscher to Hight.
On January 15, 1982, an act of sale indicated that the lot was sold back to Fritscher by Polizzi under the same terms and conditions of the sale from Fritscher to Polizzi dated February 8, 1980.
Subsequently, on September 29, 1982, the Fritschers filed a petition for mandamus to cancel mortgage inscriptions in the Parish of Jefferson. At the trial of the mandamus on August 31, 1983, it was de *107 termined that the petitioners failed to serve the judgment creditors with notice. Thus they were ordered to do so by the trial court. The mandamus proceeding was partially tried on August 31, 1983, and was continued as an open case pending service on the creditors of the notice of the mandamus.
Judgment creditor, Commercial Bank and Trust Company, after notification, intervened requesting a denial of the writ of mandamus. Additionally, Commercial filed a reconventional demand seeking to annul the purported notarial acts of sale of both the house and of the lot, each dated February 8, 1980, and each purporting to be executed before Guy W. Olano, Jr., Notary Public, as being simulations, and to have the court declare the two properties subject to execution under its judgment against Fritscher.
Judgment creditor, Lumber Products, Inc., also filed suit seeking to annul the identical acts described above as being simulations and also sought to declare the properties subject to execution under its judgment against Fritscher.
Trial of the issues was held on April 18, 1984 and April 30, 1984; and on July 6, 1984, the trial court rendered judgment denying the petition for mandamus and granting the reconventional demands of Lumber Products, Inc. and Commercial Bank and Trust Company after finding both sales to be simulations.
The Fritschers thereafter perfected an appeal of that judgment contending that:
(1) the trial court erred in finding that the sales to the Hights and Polizzis were simulations, as (a) consideration had been paid and (b) a sale with an option to re-purchase transfers ownership;
(2) the trial court erred in not recognizing that the appellees filed the wrong cause of action.
A simulation is a feigned or pretended sale clothed with the formalities of a valid sale. In order to determine whether or not a sale is simulated, the court must determine (1) whether the parties acted in good, faith; (2) whether there was an actual intention to transfer property; and (3) whether any consideration was given for the transfer. Phillips v. Nereaux, 357 So.2d 813 (La.App. 1st Cir.), on rehearing, 361 So.2d 228 (La.App. 1st Cir.1978); Spiers v. Davidson, 96 So.2d 502, 233 La. 239 (1957); LSA-C.C. art. 2480. If any consideration is given no matter how small, there is a confirmation of the reality of the sale. Russell v. Culpepper, 344 So.2d 1372 (La.1977).
There are two ways in which a presumption of simulation arises. The first is based upon Civil Code Article 2480 which reads:
2480 Retention of Possession by seller, presumption of simulation
“In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession, by a precarious title, there is reason to presume the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith and establish the reality of the sale.”
The second basis for a presumption of simulation arises when the party asserting the simulation produces evidence which creates a highly reasonable doubt or suspicion concerning the honesty or validity of the transaction. Such a showing establishes a prima facie case of simulation and the burden is thereby shifted to the defendants to demonstrate the validity of the transaction under attack. Ingram v. Freeman, 326 So.2d 565 (La.App. 3d Cir.1976).
Civil Code Article 2480 speaks of retention of possession by a “precarious title.” Article 3556(25) defines precarious possession as follows:
“That possession is called precarious, which one enjoys by the leave of another and during his pleasure. The title which excludes the ownership, such as a lease, is also called precarious.” (Emphasis added)
In this case, the trial court found that an analysis of the facts indicated the existence *108 of a sufficient basis for invoking either of the abovementioned presumptions of simulation, thus shifting the burden of proof to the party claiming the validity of the transactions.
To rebut the presumption the parties must prove that they are acting in good faith and establish the reality of the sale. LSA-C.C. art. 2480. After our review, we agree with the trial judge that the appellants failed to meet the test.
Appellants herein contend that by the two separate sales on February 8, 1980, they divested themselves of ownership of both of the properties and that when on January 15, 1982, they “re-acquired” the same two properties from their original “vendees” they received them free and clear of the judgments recorded against them prior to the discharge in bankruptcy.
THE LOT
On February 8, 1980, Fritscher, as seller, purported to enter into a cash sale transferring title to Madeline and Richard Poliz-zi, as buyers of the lot. The act of sale states that Fifty Thousand Dollars ($50,-000) was given in consideration for the sale. At trial, Richard Polizzi testified that at the act of sale he wrote Fritscher a check for Ten Thousand, One Hundred Thirty-Seven Dollars and Sixty-Nine Cents ($10,137.69). Polizzi testified that he made no other payments on the lot, and that Fritscher never asked him for the balance of the funds.
Appellants contend that other consideration for the sale allegedly consisted of the cancellation of certain promissory notes. The promissory notes were not introduced into evidence, nor were the amounts verified. The alleged holder of the notes, Richard Polizzi, denied the existence of any such documents.
Richard Polizzi further testified that he had been a neighbor of the Fritschers for about ten years. He stated that Mr. Fritscher told him he was in financial difficulty. Polizzi told Fritscher he would like to buy the lot which was located next to his home. The sale was made with the understanding that when Fritscher got out of his financial bind, Polizzi would sell the lot back to him. However, Polizzi testified that he was not even aware of the “sell back” sale dated January 15, 1982 until he was informed of such by his sister who saw the transaction published in the newspaper. Polizzi stated that the entire original transaction took place in the Polizzi home. He had no recollection of signing the buy-back sale dated January 15, 1982, and stated that he only signed documents at one time and believed that he was only signing an agreement to sell back. He further testified that he had never met Guy W. Olano, Jr., the notary on the purported acts of sale. Furthermore, after the alleged “sell back” to Fritscher, Polizzi never got his $10,137.69 back. Finally, the testimony showed that Mr. Fritscher continued to maintain the lot after the purported sale.
Appellants called Ms. Joan Montero, attorney at law, to testify at trial. Ms. Montero testified that she ceased her employment with the offices of Guy Olano in September of 1981, and had no independent recollection of witnessing any notarial acts passed by Mr. Olano after that date. However, the resale of the lot to Fritscher in January of 1982 includes the signature of Joan Montero as a witness. Ms. Montero testified that she witnessed many acts while at Olano’s office, but that in doing so she never checked the date of the document.
THE HOUSE
Also on February 8, 1980, Fritscher, as seller, purported to enter into an act of sale and assumption of mortgage transferring title to Evelyn and Tom Hight, as buyers of the residence. This sale was purportedly for the sum of One Hundred Fifty-Four Thousand Dollars ($154,000) of which Fifty-Five Thousand Eight Hundred Seventy Dollars and Two Cents ($55,870.02) was recited as paid in cash; and the balance, Ninety-Eight Thousand One Hundred Twenty-Nine Dollars and Ninety-Eight Cents ($98,129.98) was an assumption of the mortgage note executed by Fritscher in favor of the Jefferson Savings and Loan *109 Association dated September 9, 1977, in the amount of One Hundred Thousand Dollars ($100,000).
A representative of Jefferson Savings and Loan, Mr. James Bush, was called to testify at trial. Mr. Bush indicated that no notice of assumption was received by his company although such notice was required in the original act of mortgage.
Mr. Fritscher testified that he sold the house in an attempt to avoid bankruptcy. He stated that the Hights were friends of his and bought the house to help him out of financial difficulties. Fritscher did not produce Mr. or Mrs. Hight at trial. Therefore, the trial court did not have the benefit of hearing their testimony concerning their purchase of the house. The only testimony relative to the intent of the Hights in making the transaction consisted of the self-serving statements of Mr. Fritscher.
At trial it was determined that Seventeen Thousand Five Dollars and Fifty-Eight Cents ($17,005.58) cash was paid at the time of the sale of the house, contrary to the amount recited in the act of sale. It was further alleged that the cancellation of a promissory note, secured by mortgage, represented other consideration; however, Fritscher did not introduce the promissory note into evidence. The only other evidence of the alleged note was a statement made by Mr. Olano that he had reference to such in his notarial file.
The testimony elicited at trial indicates that the Fritschers retained possession of the house after the purported sale to the Hights by virtue of a lease agreement. The evidence indicates that on February 8, 1980, the same date as the alleged sale, the seller, Fritscher, entered into a lease prepared by the same notary, Guy W. Olano, Jr., who drew up the sale and assumption. Fritscher testified that the monthly rental fee was the same amount as his mortgage note on the house and that the payment of the rent was a great financial burden. Nevertheless, the Fritschers maintained their residence in the house.
The testimony of Mrs. Betty Fritscher was of little significance. She testified that she was not aware of any of the terms of the sale. She did not know if any cash or promissory notes were given in consideration of either of the sales. Furthermore, she claimed no clear recollection of the time, place or parties present at either of the acts of sale to the Hights or the Poliz-zis.
The record reveals that in spite of Fritscher’s alleged attempt to avoid bankruptcy, Marion Fritscher did in fact file a petition for bankruptcy on February 12, 1981, in proceeding No. 81-00284 of the United States Bankruptcy Court for the Eastern District of Louisiana and obtained a discharge on July 7, 1981.
Taking into consideration the financial situation of the Fritschers at the time of the sales, the dates and timing of the sales and the totality of the facts and circumstances surrounding both transactions, the trial court found that the presumption of simulation was not rebutted. The trial court was particularly suspicious of the filing dates of Fritscher’s petition for bankruptcy and the dates of the purported acts of sale. As previously noted, both purported acts of sale took place on February 8, 1980, approximately one year and four days prior to the petition of bankruptcy, conveniently placing the acts outside of the scrutiny of the bankruptcy court’s jurisdiction.
Further, close examination of the testimony and documentary evidence indicates that the parties did not intend to transfer the property. The records of Jefferson Savings and Loan Association indicate that Fritscher claimed a homestead exemption in 1980, maintained homeowner’s insurance while supposedly leasing the home, and did not inform Jefferson Savings and Loan of the assumption.
Regarding the issue of whether any consideration was given for the transfer, counsel for Fritscher argues that if any consideration, however small, is given for the property, the sale may not be set aside as a simulation. On this point the court refers *110 to Louisiana Civil Code Article 2480 which provides in part:
“The parties must produce proof that they are acting in good faith and establish the reality of the sale.” (Emphasis added)
Examination of the language of LSA-C.C. Article 2480 indicates the use of the conjunctive “and” which requires that both elements be proven in order for the party to prevail. In other words, Fritscher must have demonstrated good faith, intent to transfer and the actual payment of consideration. Hall v. Allred, 385 So.2d 593 (La.App. 3d Cir.1980).
As previously noted, the evidence at trial reflects that there was substantial discrepancy in the consideration recited in the acts and that which was actually proven to have been given. Although consideration was proven to have been given, the consideration as agreed to and recited in the purported acts of sale was not in fact paid.
Appellant cites numerous cases for the proposition that any consideration, given regardless of how small, proves reality of the title. However, our research indicates that those eases would more correctly support a contention that any recited consideration, however small, if paid, would rebut the presumption of a simulation.
In Adams v. Trichel, 304 So.2d 740 (La.App. 2d Cir.1974), the court upheld the sale holding that:
“The consideration as agreed upon and having recited in the deed, under attack herein was in fact paid and the obligation discharged” id. at 741. (Emphasis added)
The Supreme Court reached a similar result in Russel v. Culpepper, supra, where the court held that the consideration recited was actually paid.
In Hysmith v. Coleson, 421 So.2d 402 (La.App. 1st Cir.1982), the consideration for the sale was Seven Thousand Dollars ($7,000) cash and a note. Evidence demonstrated that cash was paid, a note was executed and Fourteen Thousand Dollars ($14,000) was paid on the note until the time of the vendor’s death.
On the contrary, in the present case, the consideration recited was not paid and the alleged notes were never introduced into evidence, nor was there testimony concerning the amount of the alleged notes.
Although there is no dispute that parol evidence may be used to prove other consideration, in the present case, the parol evidence was not certain and was self-serving at best.
In Peyton v. Roth, 149 La. 147, 88 So. 773, the court held: “The only proof offered by defendant to show that he paid the price stated in each act of sale was his own testimony and that of his wife.” id. 88 So. at 774 (Emphasis added).
The only case cited wherein a simulation was not found under circumstances where the full recited consideration was not paid or supported by some other service then the stated cash is Bagala v. Bagala, 110 So.2d 526, 237 La. 60 (1959). There the totality of the facts were not highly suspicious unlike the facts herein.
Consequently, after our review of the law and evidence, we find that the trial court did not err in determining the sales to be simulations under the facts of this case.
Appellant’s second specification of error alleges that the proper method for attacking the alleged sale is a revocatory action, which admittedly had prescribed pri- or to the filing of plaintiff’s petition for mandamus. However, the action to attack the simulated sale does not prescribe. Lawson v. McBride, 46 So. 312, 121 La. 282 (1908), and since we find the sales herein to be simulated, this specification of error forms no basis for relief.
In conclusion, the trial court found, and we agree, that the four acts of sale herein of purchase and re-purchase of the two pieces of property were simulations and designed to avoid liens of the creditors.
Thus, for the foregoing reasons, after a review of the law and evidence, we hereby affirm the trial court judgment denying the petition for mandamus setting aside the *111 purported sales and ordering the property subject to execution.
Costs of appeal are to be paid by the appellants.
AFFIRMED.