SEXTON, Judge.
In this succession proceeding, the plaintiffs-appellants, four forced heirs of the decedent, Noah Cloud, appeal the judgment of the trial court rejecting their demands to have a certain twenty acre tract of land *579 declared to be the property of the succession. The defendants-appellees are Urzula Cloud Hatch, another forced heir; B.M. Hatch, ex-husband of Urzula; Urzula, Inc.; and Martin Sanders, Jr. Mr. Sanders is also the attorney for himself and the remaining defendants in this case. For the reasons expressed herein, we reverse the judgment of the trial court.
The chronology of events leading up to this action is as follows. On March 22, 1963, Noah Cloud granted a mineral lease to Placid Oil Company on a certain tract of land containing approximately twenty acres, located in Natchitoches Parish, Louisiana, Section 22, Township 11 North, Range 6 West, being the East Half of the Northwest Quarter of the Southeast Quarter. On August 21, 1964, Noah (then age 84) signed a deed transferring the twenty acre tract to his son-in-law, B.M. Hatch. On that same date, Noah moved off the land to the residence of his daughter, Urzu-la, and her husband, B.M. Hatch.
Noah died on December 30, 1966. A few months later, on April 4, 1967, Lucy Cloud, his wife, was interdicted. Between March 1, 1968, and February 28, 1980, Urzula, as administratrix of the succession, filed 28 tableaus of distribution, all of which alleged that Lucy owned one-half of the funds in the hands of the administratrix and a usufruct over the other one-half. Moreover, Urzula filed a detailed descriptive list in 1968 and two amended detailed descriptive lists, the first in 1968 and the second in 1985, all of which listed the subject 20-acre tract as succession property.
Although Urzula included this twenty acre tract in the detailed descriptive lists and tableaus of distribution as aforesaid, this tract and its minerals were included in the property she received in the 1978 community property settlement following her divorce from her husband, B.M. Hatch, in 1974.
Up until May 26, 1981, Noah or his succession continued to receive royalty payments owed on the twenty acre tract from Placid Oil Company. On this date, Urzula contacted Martin Sanders, attorney at law, seeking his advice with respect to the royalties emanating from this property. Sanders advised Urzula that she was the owner of the property and he suggested that Ur-zula begin receiving these royalty payments in her own name. Thereafter, Sanders incorporated Urzula and on June 27, 1983, a deed transferring the twenty acre tract from Urzula to Urzula, Inc. was executed. On June 20th, Urzula conveyed one-fourth of the minerals underlying the subject property to Mr. Sanders for a stated consideration of $10,000 “in legal services.” On the 31st of August she conveyed an additional one-twelfth thereunder to Mr. Sanders for another $10,000 “in legal services.”
Plaintiffs, the brothers and sisters of Ur-zula Cloud Hatch and thus her co-forced heirs, filed this suit on May 7, 1984, contending that the succession of Noah Cloud is the rightful owner of the twenty acre tract in question.
After a two day trial in May of 1985, the trial court rendered judgment rejecting the demands of the plaintiffs on November 21, 1985.
In its reasons for judgment, the trial court held that the burden was on the petitioners to prove a simulated sale because the initial purchaser, B.M. Hatch, was not an heir of Noah Cloud, and Noah Cloud did not remain in possession of the property, reserve a usufruct or retain possession by precarious title. Therefore, the trial court determined that as a result of these circumstances, the “present owners” were not required to produce proof of their good faith in accordance with LSA-C.C. Art. 2480.[1] From this judgment, the plaintiffs appeal.
*580 The plaintiffs-appellants assert that the trial court erred in two respects:
(1) The trial court erred in finding that Civil Code Article 2480 was inapplicable to this case, thereby placing the burden upon the appellants to show that the sale was simulated.
(2) The trial court erred in finding a valid transfer by deed dated August 21, 1964, from Noah Cloud to B.M. Hatch.
With regard to the law applicable to simulations, this court in Kennedy v. Bearden, 471 So.2d 871 (La.App.2d Cir.1985), stated:
A simulation is a transfer of property which is not what it seems. Simulations are of two types: pure simulations and disguised transfers. In a pure simulation, sometimes called a nontransfer, the parties only pretend to transfer the property from one to the other, but in fact both transferor and transferee intend that the transferor retain ownership of the property. When this type of simulation is successfully attacked, the true intent of the parties is revealed; that is, that no transfer had in fact taken place. The other type of simulation is a disguised transfer which seems on its face to be a valid sale, but in fact is actually intended by the parties to be a gift rather than a sale.
Two legal presumptions, one codal and one jurisprudential, apply in situations where a party seeks to prove a pure simulation. Kennedy v. Bearden, supra. The codal presumption is expressed in LSA-C.C. Art. 2480 and is applicable where the vendor retains the possession of the thing sold by usufruct or by precarious title.
A transaction will not be set aside as a simulation if any consideration supports the transaction because the reality of the transference is thus established. Russell v. Culpepper, 344 So.2d 1372 (La.1977).
The jurisprudential presumption of simulation applies where the evidence establishes the existence of facts and circumstances which create a highly reasonable doubt as to the reality of a putative sale. Kennedy v. Bearden, supra; Wilson v. Progressive State Bank and Trust Company, 446 So.2d 867 (La.App.2d Cir.1984).
When either the codal or jurisprudential presumption exists, the burden of proof shifts to the other party to the sale who may rebut the presumption by establishing a good faith transaction resulting in a true alienation of ownership for consideration. Kennedy v. Bearden, supra; Russell v. Culpepper, 337 So.2d 226 (La.
We agree that the record in this case does not support a codal presumption of simulation since there was no showing of a usufruct or a precarious title.[2] The *581 instant circumstances not fitting within those specifically enumerated by Article 2480, our task, then, is to determine whether the circumstances of the transaction from Noah Cloud to B.M. Hatch of August 21, 1964, create so significant a reasonable doubt as to the reality of the transfer as to envolce the jurisprudential presumption and shift the burden of proof to the purported vendee to establish actuality of the sale.
The record is clear that significant mineral royalties were paid on this tract to Noah Cloud after the deed in question, and thereafter to his succession for a lengthy period of time. Such exercise of dominion over property which was the subject of a purported sale is clearly sufficient to en-voke the presumption of a simulation, whether expressed codally or jurispruden-tially. See Sabrier v. Leard, 426 So.2d 213 (La.App. 4th Cir.1982); Dietz v. Dietz, 227 La. 801, 80 So.2d 414 (1955).
Particularly telling are the judicial confessions[3] of the defendant, Urzula Cloud Hatch, with respect to this property, although she ostensibly purchased the property from her husband for $2,000 consideration by cash deed on December 17, 1971,[4] and she also received the property in the community property settlement from her husband, B.M. Hatch, on May 1, 1978. She filed 28 tableaus of distribution between March 1, 1968, and February 28, 1980, indicating that the mineral proceeds from this property were the property of the succession. Also, the detailed descriptive list in 1968 and the amended detailed descriptive list also of 1968 and the second detailed descriptive list of 1985 previously referenced herein listed the subject property as succession property. Moreover, during a hearing on November 6, 1975, in which she sought alimony from B.M. Hatch, she denied ownership of any property in Natchitoches Parish when cross examined by Martin Sanders, Jr., then serving as Mr. Hatch’s attorney in those proceedings.
We therefore have no difficulty in envok-ing the jurisprudential presumption of simulation with respect to the transaction at issue as a result of the continued possession of the property by Noah Cloud and his succession, as well as the judicial confessions of Urzula Cloud Hatch.
Thus, the defendants have the burden to establish the following: (1) a good faith intention to transfer ownership; (2) the delivery of the property; and (3) an exchange of consideration. LSA-C.C. Art. 2480.
The only evidence presented as to the exchange of consideration was the conflicting testimony of Urzula Hatch and B.M. Hatch. While B.M. Hatch testified that he paid $2,000 for the twenty acre tract, there was no supporting documentation in this respect, nor indeed was there *582 any proof of the recited $250 consideration other than Hatch’s testimony. No can-celled checks in either of these amounts or bank withdrawals or other evidence tending to support the consideration were introduced.
In contrast, Urzula Hatch testified she knew of no cash consideration being paid.
The evidence with respect to the obligation of Urzula and B.M. Hatch to care for Noah and Lucy Cloud as consideration for the transfer is also contradictory and hazy. B.M. Hatch explicitly testified that such an arrangement was not consideration for the transfer. Furthermore, our view of Urzula Hatch’s deposition causes us to believe that a fair reading of that testimony is that Noah Cloud hoped that she and B.M. Hatch would take care of Lucy and Noah Cloud, however, the sale was not contingent upon this occurrence.
Thus, considering the confusing and conflicting testimony with respect to consideration together with the retention of possession by Mr. Cloud or his subsequent succession in the form of receipt of significant royalty interest payments, we conclude that the defendants have not borne their burden overcoming the presumption of simulation with respect to the instant transaction. We thus determine that plaintiffs are entitled to a judgment decreeing that the instrument at issue is null and void as a simulation and that the subject property belongs to the succession of Noah Cloud.
DECREE
It is hereby ordered, adjudged and decreed that that certain instrument of August 21, 1964, deeding from Noah Cloud to B.M. Hatch the following described property:
The S ⅝ of the SE V4 of the SW lk of the SW ¼ of Section 15, Township 1, Range 4 West, Natchitoches Parish, Louisiana, containing 20 acres more or less, together with all buildings and improvements thereon.
is hereby declared null and void; and the aforesaid property is decreed to belong to the succession of Noah Cloud.
All costs of these proceedings are to be borne by defendants herein.
REVERSED AND RENDERED.
Before HALL, FRED JONES, Jr., SEXTON and LINDSAY, JJ. and HEARD, J. Pro Tern.
SEXTON, Judge.
A rehearing was originally requested here by Urzula Cloud Hatch, Urzula, Inc., Martin S. Sanders, Jr. and B.M. Hatch (Ur-zula’s former husband). We granted a rehearing to specifically consider the nature of Sanders’ interest in the minerals in question.
Previous to considering the substantive issue for which we granted the rehearing, we take note of several interesting procedural developments which have occurred subsequent to our order granting this rehearing.
First of all, under a letter dated March 20, 1987, we received a Motion for a Limited Remand signed by Mr. John C. Blake, Attorney at Law, who asserted that he was now counsel for Urzula Cloud Hatch and Urzula, Inc. The motion was also signed by counsel for the original plaintiffs. In this motion, Urzula Cloud Hatch alleged that she was not aware that she had deeded her mineral interest to Mr. Sanders and further alleged that he generally “kept her in the dark” regarding this litigation. The purpose of the motion was to seek a remand for further testimony in this respect from Urzula Cloud Hatch. Also attached was a copy of a deposition of Urzula Cloud Hatch.
While this deposition has not been examined in detail, a cursory reading indicates that it contains additional support for our holding that the Cloud/Hatch transaction was indeed a simulation. Additionally, Ur-zula Cloud Hatch testified that she never intended to convey any of her mineral interest to Mr. Sanders, but was deceived by him in that respect. We deny this motion because it attacks circumstances surrounding the transaction between Mrs. Hatch and Mr. Sanders which were not an issue in the trial court and are likewise not an issue *583 before us. Our concern here is the quality of the 1964 transaction between Mr. Cloud and Mr. Hatch and the effect of our determination that the transaction is a simulation upon Mr. Sanders’ apparent mineral interest. We therefore do not consider the content of the deposition.
Then, on April 9, 1987, we received a certified copy of a motion and a signed order to withdraw the request for a rehearing which was filed in the Second Judicial District Court where this litigation originally arose. The movers in the motion were specifically stated to be Urzula, Inc. and Urzula Cloud Hatch, “two of the appellees in the above aforesaid matter.” The motion was signed by Urzula Cloud Hatch, both in her personal capacity and as president of Urzula, Inc. The motion was also signed by each of the original plaintiffs here. The attached order was granted by the district judge on April 3, 1987. Of course, this order is of no effect since the trial court lost jurisdiction upon the appeal of this matter. LSA-C.C.P. Art. 2088.
On May 15, 1987, a similar motion to withdraw the application for rehearing on behalf of Urzula Cloud Hatch and Urzula, Inc., signed simply by Mr. Blake and also by counsel for the plaintiffs, was filed in this court. This motion, which we now hereby grant, specifically notes that the motion in no way pertains to the interest of the appellees, Martin S. Sanders, Jr. and B.M. Hatch.
Additionally, before considering the specific issue for which this rehearing was granted, we should note that our property description in the decree in the original opinion is somehow in error. The description of the property in the decree of the original opinion will be amended to read as follows:
The East One-half of the Northwest Quarter of the Southeast Quarter, Section 22, Township 11 North, Range 6 West, containing 20 acres more or less, located in Natchitoches Parish, Louisiana, together with all buildings and improvements thereon.
Now considering the question of what interest Mr. Sanders enjoys in the minerals under the subject property, it will be recalled that Mr. Sanders received his mineral interest in two separate deeds as legal fees for his representation of Urzula Cloud Hatch. In reviewing these dates as listed in our original opinion, we note that we omitted the year of the respective deeds therein. The first of the deeds was dated June 22, 1980, and transferred one-fourth of the minerals in and unto the subject property from Mrs. Hatch to Mr. Sanders. (P-5) The second deed was dated August 31, 1981, and transferred ½2& of the minerals in and under the same property from Mrs. Hatch to Mr. Sanders. (P-6) The consideration recited in each of the deeds was $10,000 in legal services.
In opposition to Mr. Sanders’ contention on rehearing, the original plaintiffs first contend that certain specifically enumerated actions of Mr. Sanders are sufficient to at least create a presumption that the mineral deeds were simulations, generally relying on the law regarding retained possession which we cited in the original opinion herein.
We have no difficulty determining that simulation is not a viable issue with respect to Mr. Sanders’ interests. It is clear that Mr. Sanders had provided a significant level of legal services to Mrs. Hatch and the record easily reflects “some” consideration for the deeds at issue. Any consideration, no matter how slight, is sufficient to defeat a claim of simulation. Russell v. Culpepper, 344 So.2d 1372 (La.1977).
Plaintiffs’ most serious contention is that Mr. Sanders as an attorney is governed by LSA-C.C. Art. 2447, which states that attorneys, among others, may not purchase “litigious rights” under penalty of nullity. Additionally, they argue that as an attorney governed by the Code of Professional Responsibility he may not acquire a proprietary interest in a cause which is the subject matter of litigation, except as a contingency. DR 5-103.
Mr. Sanders counters that as a “third party” he is entitled to rely on the public records evidencing an apparent valid sale, *584 even though he may have had actual knowledge sufficient to create some doubt as to the validity of the transfer. LSA-R.S. 9:2721.
Indeed, a third party purchaser may rely on the public records as long as he does not participate in fraud,* even though he may have had actual non-record knowledge which creates suspicion as to the validity of the preceding transfer. Owen v. Owen, 336 So.2d 782 (La.1976); Chachere v. Superior Oil Company, 192 La. 193, 187 So. 321 (1939). See also Comment (c) to LSA-C.C. Art. 2028.
Therefore, Mr. Sanders is entitled to prevail unless he indeed purchased a “litigious right” as an officer of the court contrary to LSA-C.C. 2447.
In considering whether a litigious right is here involved, it should be recalled that plaintiffs’ petition asserting simulation was not filed until May 7, 1984, well after the two transfers from Mrs. Hatch to Mr. Sanders. It is true, however, that plaintiffs filed for an accounting in this cause during the period between the first and second deeds. Likewise, it is obvious that Mr. Sanders was aware that Noah Cloud had died and that Urzula Cloud Hatch was the administratrix of Noah Cloud's succession, which included the instant mineral interests as one of its assets. He obtained this knowledge in his capacity as attorney at law.
Under LSA-C.C. Art. 2653, a litigious right is said to exist “whenever there exists a suit and contestation on same.” LSA-C.C. Art. 3556(18) adds that litigious rights are those “which cannot be exercised without undergoing a lawsuit.” Further, Hawthorne v. Humble Oil & Refining Company, 210 So.2d 110 (La.App. 1st Cir.1968), writ denied 252 La. 832, 214 So.2d 160 (1968), defines a litigious right under LSA-C.C. Art. 2652 as being a right transferred after suit is instituted and an answer filed, but before judgment. See also D’Albora v. Roussel, 182 So.2d 124 (La.App. 4th Cir.1966), holding that an attorney’s purchase of royalty interests which were then in litigation was void as a purchase of litigious rights.
However, if a suit is not pending, the right involved is not litigious. Gautreaux v. Harang, 190 La. 1060, 183 So. 349 (1938). The fact that a suit is necessary to enforce the right or that a suit is anticipated thereon does not make the right litigious. McClung v. Atlas Oil Company, 148 La. 674, 187 So. 515 (1921).
The conclusion is thus inescapable that the mineral interest Mr. Sanders acquired was not a litigious right because it was not then the subject of litigation, even though litigation was apparently anticipated. The property was only listed as a succession asset. It is clear that Mrs. Hatch could have sold her interest in the property or the succession at the time of these transactions. Thus, Mr. Sanders, as a theoretical third party, was entitled to rely on the ownership status of the property as reflected by the public records. Therefore, Mr. Sanders’ mineral interest is unaffected by our determination that the 1964 transaction between Mr. Cloud and Mr. Hatch was a simulation.
If the interest purchased by Mr. Sanders was not a litigious right, it likewise follows that he was not acquiring “a proprietary interest in the cause of action or subject matter of litigation” contrary to DR 5-103.
In conclusion, we reiterate the holding of the original opinion that the transaction between Noah Cloud and B.M. Hatch in 1964 was a simulation, and we hold here on rehearing that the mineral interest of Mar *585 tin Sanders, as represented by the deeds filed herein as Exhibits P-5 and P-6, is not affected by our determination that the transaction between Mr. Cloud and Mr. Hatch was a simulation. Therefore, our original decree reversing the decision of the trial court is maintained but that decree is amended with the following particulars.
DECREE
_ It is hereby ordered, adjuged and decreed that the certain instrument of August 21, 1964, deeding from Noah Cloud to B.M. Hatch the following described property:
The East One-half of the Northwest Quarter of the Southeast Quarter, Section 22, Township 11 North, Range 6 West, containing 20 acres more or less, located in Natchitoches Parish, Louisiana, together with all buildings and im•provements thereon
is hereby declared null and void. The aforesaid property is decreed to belong to the succession of Noah Cloud, less and except the one-third (Vs) interest in the minerals in and under the aforesaid property acquired by Martin S. Sanders, Jr. from Urzula Cloud Hatch by deeds signed June 20, 1980, and August 31, 1981, being Instrument Number 159,325 in Conveyance Book 362 at Page 509 and Instrument Number 163,444 in Conveyance Book 374 at Page 378, respectively, in the records of Winn Parish.
All costs of these proceedings are to be borne by the defendants herein other than Martin S. Sanders, Jr.
ORIGINAL OPINION AMENDED and AS AMENDED, RENDERED.

. Art. 2480. Retention of possession by seller, presumption of simulation
Art. 2480. In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title. there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.

. Obviously, a usufruct was not reserved in the instant case. However, we admit to some difficulty in locating a definition of precarious title in our law within the context of LSA-C.C. Art. 2480. LSA-C.C. Art. 3556, Section 25, which defines precarious possession also states that a title excluding ownership, "such as a lease, is also precarious.” Further, article 3556 defines precarious title as the possession which one enjoys by leave of another. See also Collins v. Quinn, 366 So.2d 209 (La.App.2d Cir.1978).
The ancient case of McCloskey v. Central Bank of Alabama, 16 La.Ann. 284, (1861), is the only jurisprudence we have located discussing the nature of a precarious title. In McCloskey, the court noted the Spanish and French derivation of the predecessor to Section 25 of Article 3556 and pointed out that when property is donated or sold by one to another and the vendor/donor simultaneously leases the property, the vendee/donee has true possession of the property. Thus, the apparent former owner and lessee is said to have a precarious title. Thus, one exercising dominion by collecting rent or royalty is not one who by definition possesses by virtue of a precarious title.
In this respect, however, we note that certain jurisprudence seems to have equated retention of possession by the collection of rents or exercise of other dominion with the possession by usufruct or precarious title and envoked the codal presumption, even though Article 2480 can be said to limit the presumption thereunder strictly to situations where there is a usufruct or precarious title. See Sabrier v. Leard, 426 So.2d 213 (La.App. 4th Cir.1982); Dietz v. Dietz, 227 La. 801, 80 So.2d 414 (1955).
Also on occasion a presumption has been en-voked without a specific determination of whether the appropriate presumption is codal or jurisprudential. See Fritscher v. Justice, 472 So.2d 105 (La.App. 5th Cir.1985), and Wilson v. *581 Progressive State Bank and Trust Company, supra.

. A judicial confession is defined in C.C. Art. 1853, which states:
Art. 1853. Judicial confession
A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
A judicial confession is indivisible and it may be revoked only on the ground of error of fact.
While a judicial confession is not conclusive, see, e.g., Crawford v. Deshotels, 359 So.2d 118 (La.1978), we find it compelling, particularly when considered in light of the other record evidence.

. It appears that the transaction was invalid under former Civil Code Article 2446 which stated:
Art. 2446. Sales between husband and wife
Art. 2446. A contract of sale, between husband and wife, can take place only in the three following cases:
1. When one of the spouses makes a transfer of property to the other, who is judicially separated from him or her, in payment of his or her rights.
2. When the transfer made by the husband to his wife, even though not separated, has a legitimate cause, as the replacing of her dotal orother effects alienated.
3. When the wife makes a transfer of property to her husband, in payment of a sum promised to him as a dowry.
Saving, in these three cases, to the heirs of the contracting parties, their rights, if there exist any indirect advantage.
This article was later repealed by Acts of 1978, No. 627, § 5.

The original petition alleges that Mr. Sanders was a bad faith transferee in that when he obtained his interest he had actual knowledge of the fact that the property was included in the succession. We do not take this allegation to be an allegation of fraud in the context pled, LSA-C.C.P. Art. 856, but, rather, an allegation regarding the extent of Mr. Sanders’ knowledge of the Cloud/Hatch transfer at issue. As we point out, his actual knowledge of possible adverse claims is of no moment.
Also, in the motion to remand, the original plaintiffs and Mrs. Cloud alleged that Mr. Sanders acted without authority when he obtained these interests from Mrs. Cloud. As we have noted, we consider the issues raised by the allegations of the motion to remand to be outside the context of this case.